UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                              :
                                          Docket #1:19-cv-07470-
 SKETCHWORKS INDUSTRIAL STRENGTH,   :  LTS-DCF
 COMEDY, INC.,
                                    :
                  Plaintiff,
  - against -                       :

 JACOBS, et al.,                    : New York, New York
                                       February 21, 2020
                  Defendants.       :

------------------------------------------- :
```

PROCEEDINGS BEFORE
THE HONORABLE JUDGE DEBRA C. FREEMAN,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          J. GREENBERGER, PLLC
                        BY:  JORDAN D. GREENBERGER, ESQ.
                        500 Seventh Avenue - 8th Floor
                        New York, New York 10018
                        718-502-9555

For the Defendant,      HOWARD J. SCHWARTZ, ESQ.
James H. Jacobs:        5d Rutland Lane
                        Monroe, New Jersey 08831
                        973-214-7665

For the Defendant,      PEPPER HAMILTON, LLP
Vanguard National       BY:  KENNETH J. KING, ESQ.
Trust Company:          620 Eighth Avenue
                        New York, New York 10018
                        212-808-2700


Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street, #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771


Proceedings and recorded by electronic sound recording;
Transcript produced by transcription service

**<u>INDEX</u>**

**<u>E X A M I N A T I O N S</u>**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

**<u>E X H I B I T S</u>**

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                      PROCEEDINGS                3

 2          THE CLERK:  Sketchworks Industrial Strength

 3  Comedy, Inc. v. Jacobs et al.

 4          Counsel, please state your name for the record.

 5          MR. JORDAN GREENBERGER:  Good morning, your Honor.

 6  Jordan Greenberger for plaintiff, Sketchworks.

 7          HONORABLE DEBRA C. FREEMAN (THE COURT):   Good

 8  morning.

 9          MR. HOWARD SCHWARTZ:  Good morning.  Howard

10  Schwartz for defendant Jacobs.

11          THE COURT:  Good morning.

12          MR. KENNETH KING:  Good morning, your Honor.

13  Kenneth King for defendant Vanguard National Trust Company

14  as trustee under the will of Warren Casey.

15          THE COURT:  I'm sorry?

16          MR. KING:  As trustee under the will of Warren

17  Casey, Vanguard National Trust Company.

18          THE COURT:  All right.  So I have some

19  correspondence here at least from one side of the  aisle.

20  So somebody just fill me in here.  There's been a motion

21  to dismiss filed, and is that --

22          MR. SCHWARTZ:  That's sub --

23          THE COURT:  -- in -- is it fully briefed?

24          MR. SCHWARTZ:  Oh, yes.  It was submitted, I

25  think, the first week in December, right  after
```

1  Thanksgiving.

3        So if I can speak first?

4        There's only one side submitting information to

5  your Honor because the defendant basically doesn't

6  disagree with the concept that in this kind of a case it's

7  a side-by-side analysis -- that's not the issue.

8        The only issue for us -- and we've had some

9  correspondence going back and forth, and as of yesterday,

10 there seemed to be some movement about this. But what I'm

11 specifically talking about in terms of discovery, so in a

12 side-by-side analysis, the Court can see the words and can

13 see certain aspects of it. But this work is a parody in

14 plaintiff's view, a rip-off in the defendants' view of the

15 play "Grease." And so there's music involved. And a

16 Court -- I have all respect for all courts -- can't tell

17 side by side what's taken and what's not taken and how

18 much is taken. So I've been asking plaintiff simply --

19 and they're not denying that they've taken it -- and I'm

20 saying, "Just tell me how much of the music you took,

21 because that's an element of proof in the case as to how

22 much taking has occurred in order to create a parody."

23        So we think that they've taken all of the music

24 from all of the songs. And I was asking, I said, "Just

25 stipulate to that; you know, it's not harm, no foul.

1                          PROCEEDINGS                      5

2    You're going to have to tell me, anyway." And we went for

3    months and months with that not really resolving. And

4    then I think either yesterday or the day before the

5    plaintiff's lawyer sent me mp3's of the music, which

6    there's some movement. But all I'm asking for, to put it

7    bluntly, is there are perhaps 30 to 40 versions of each of

8    the songs that they copied. Even if they should say they

9    copied all of the songs or they copied three out of three

10   minutes and 15 seconds of it, I mean, that's information

11   within their knowledge that they could easily obtain; or

12   they should, if they don't want to do that, they should

13   tell me which version of each song they copied so that we

14   can then compare them to establish how much taking

15   occurred. That's all I'm trying to find out. Does that

16   make sense?

17          THE COURT: Wait. Hold on a second. Plaintiff

18   seeks declaratory judgment that he's not infringing.

19          MR. GREENBERGER: Correct.

20          THE COURT: Defendant wants to dismiss the

21   complaint. And you, if you're successful, you are going

22   to assert a claim on your own of infringement, or

23   you're --

24          MR. SCHWARTZ: No, no, no, no. Chances are if

25   the case is dismissed, we're happy the case is dismissed.

```
 1                        PROCEEDINGS                     6
 2  The underlying factors, the agents for the defendants  sent
 3  a cease-and-desist letter which was withdrawn once  the
 4  principals found out.  So that's the basis of  the
 5  underlying case.
 6            THE COURT:  All right, so you're not going  to
 7  claim that it is infringing?
 8            MR. SCHWARTZ:  It's uncertain -- if the case  is
 9  dismissed on this present motion, the defendants  are
10  uncertain.  Chances are they would like the whole thing  to
11  just disappear.  If the case is not dismissed, we'll  have
12  to -- we'll assert counterclaims and defend  vigorously.
13            MR. GREENBERGER:  Your Honor --
14            THE COURT:  So right there --
15            MR. GREENBERGER:  -- that totally defeats  their
16  motion to dismiss, which is based on the argument  that
17  there's no case in controversy.  Right?  Their entire
18  argument that they're entitled to discovery is
19  contradictory to their position that they made to  Judge
20  Swain, which is we withdrew the cease-and-desist  letter,
21  and so the case is moot because there's no case  in
22  controversy.  That, of course, ignores the fact  that
23  another attorney who represents the defendants, I believe  a
24  transactional attorney, said this is a blatant  infringement
25  of my client's rights and all this other stuff, and  the
```

```
 1                          PROCEEDINGS                    7
 2   tone of the various correspondence we've had.
 3           So my first response is you can't have it both
 4   ways.  You can't say there's no case in controversy because
 5   we're not claiming infringement, but by the way, we want
 6   discovery.  And even here today he won't say we're not
 7   withdrawing our claims, but maybe it will go away; but if
 8   it doesn't we're going to counterclaim against you.  I
 9   mean, I'm going to get a copy of this transcript and send
10   it to Judge Swain because it totally defeats their motion,
11   which I've asked them to withdraw.
12           On the question of discovery, I submitted to your
13   Honor various citations, the case law from the Southern
14   District of New York, including cases that have been
15   affirmed by the Second Circuit.  I cited cases to the
16   Second Circuit where they say when it's a parody defense
17   based on fair use, you don't need discovery; you compare
18   the subject works and you analyze it under relevant case
19   law.  That's all we're asking to do.  The case I cited to
20   your Honor, the Lombardo case, I represented the successful
21   plaintiff in that case.  Judge Hallerstein, what he said
22   was let's close the pleadings; you have your declaratory
23   judgment claim; the defendant counterclaims for
24   infringement; you answer.  Boom, you make a rule 12(c)
25   motion on the pleadings.  There's no need for discovery.
```

```
 1                           PROCEEDINGS                    8
 2   And that's the course that the courts in this  jurisdiction
 3   have been taking in fair-use  cases.
 4              So our position is there's no need for  discovery.
 5   That being said, I gave counsel a copy of  the mp3's.  The
 6   complaint, paragraph one, cites to a YouTube video.  So he's
 7   had the songs since September if he really wanted to  listen
 8   to them.  Paragraph nine explicitly says that the play is
 9   based on the popular movie version of "Grease," which is  the
10   1978, I think, film with John Travolta.  So he's known  for
11   months what it's based on.  But I'll say it explicitly, the
12   authors of the play watched the 1978 movie and wrote  a
13   parody.  They did not write the songs, they're not the  song-
14   writers.  There's a separate musical arranger who I  don't
15   represent.  I represent Sketchworks Industrial  Strength
16   Comedy, Inc., which is the owner of the copyright on  the
17   play or the parody.  But I have the songs, you've had  them
18   in the YouTube video for months.  You have the mp3's  now,
19   and now you know exactly the entire basis where somebody  sat
20   down and watched the movie and made fun of it.  That's the
21   entire case.
22              THE COURT:  All right, hang on a second.  I'm
23   still trying to get my head around  this.
24              MR. GREENBERGER:  sure.
25              THE COURT:  So defendants have said on the  motion
```

1

2  to dismiss we're not really going after them for

3  infringement.  Because we're not really going after them for

4  infringement, they don't have a basis to seek a  declaratory

5  judgment.  We're really not doing that.  They don't have a

6  good reason to fear that.  There's no reason we need the

7  Court to make a statement on the issue.  Is that right?

8           MR. SCHWARTZ:  Correct, because -- or at least

9  partially correct -- because we withdrew -- the only  issue

10  for the plaintiffs about defendants asserting their  rights

11  was a cease-and-desist letter, which was unauthorized,  sent

12  by mistake and withdrawn.  So we --

13           THE COURT:  So you're not really asking them to

14  cease and desist?

15           MR. SCHWARTZ:  No.

16           THE COURT:  You're okay with their doing this;

17  you're not really challenging it?  You reserve the right to

18  challenge it if the case goes forward, but if the case  does

19  not go forward, then you confirm that you will not be

20  challenging it?

21           MR. SCHWARTZ:  No, no, no, no.  There are two

22  slightly different parts there which --

23           THE COURT:  All right, this is not meant to be

24  oral argument on the motion to dismiss.  I don't have  that

25  motion in front of me -- right -- and I'm not trying  to

```
 1                        PROCEEDINGS                10
 2   create a record for Judge Swain.  I'm just trying to
 3   understand, in the context of the discovery that you might
 4   be seeking here and whether I should set a schedule  or
 5   whether I should stay discovery, what your position is,
 6   whether you care about this or you don't care about  this.
 7            MR. SCHWARTZ:  Well, we certainly care a lot about
 8   it.  But the posture of the case is if the motion to  dismiss
 9   is denied, plaintiff will go forward with  the case.  In that
10   event, we will assert a counterclaim both as to  copyright
11   infringement and other claims which I've notified  plaintiff
12   about.  If the case goes forward, the only issue  important
13   to the defense to determine is the amount of the music  that
14   was actually taken.  The plaintiff says, "Well, we know  what
15   the song" -- identified the songs, and he knows what  they
16   are.  The songs are the songs, but the issue is how much  of
17   the music was taken.
18            THE COURT:  So what would you need in  discovery
19   that you don't already have in that  regard?
20            MR. SCHWARTZ:  The versions of the songs that  they
21   copied them from -- that's within -- in other words,  for
22   each song, say --
23            THE COURT:  I thought counsel just said it was
24   from the movie version, the one --
25            MR. SCHWARTZ:  That's the first I've --
```

```
 1                        PROCEEDINGS                   11

 2            THE COURT:  -- with John Travolta in it.

 3            MR. SCHWARTZ:  Yeah, if that's the case, then it's

 4   just as easy for him to tell me did they copy all of  the

 5   songs --

 6            THE COURT:  Well, if you --

 7            MR. SCHWARTZ:  -- or is there one note in the  song

 8   that's different.  That --

 9            THE COURT:  If you have a copy of the  performance

10   of the  claimed parody musical and you have the movie that  it

11   was claimed to be a parody of, what more do you  need?

12            MR. SCHWARTZ: If they've copied it only from that

13   movie version, because each one of those songs has different

14   versions to it. Does that make sense to your  Honor?

15            THE COURT:  Each version -- I'm sorry, which

16   songs, the songs in the movie or the songs in the  parody?

17            MR. SCHWARTZ:  No, the songs in the movie may have

18   different versions of it.  Each song has different -- each

19   song that defendants own has different  versions.

20            THE COURT:  Okay.  So I understand plaintiff to be

21   saying that it was --

22            MR. GREENBERGER:  From the movie version.

23            THE COURT:  -- meant to be a parody from the movie

24   version.  Is that correct, counsel?

25            MR. GREENBERGER:  That's correct, your Honor.
```

```
 1                        PROCEEDINGS              12
 2              THE COURT:  Okay.  It says -- in paragraph nine of
 3   the complaint it says -- and I will read it -- "On
 4   information and belief, several variants of 'Grease' exist
 5   such that there are differences between the original  play,
 6   the 1978 film, and versions currently licensed by
 7   defendants.  The following is a synopsis of the popular  film
 8   version, a derivative of defendants' original musical,  and
 9   upon which 'Vape' is based."  Right?  So if I'm reading
10   that right, it's the 1978 film version upon which  the
11   plaintiffs play or musical is based.  Am I reading  that
12   right?
13              MR. GREENBERGER:  That's correct, your Honor.
14              THE COURT:  Okay.  So it says that.  He's
15   confirmed that on the record for you.  Now what more do  you
16   need?
17              MR. SCHWARTZ:  I would request, if that's the
18   case, then they simply notify me or acknowledge to me  that
19   they've taken all of those songs and used those songs  --
20              THE COURT:  Why can't you figure that out
21   yourself if you have the movie and you have the  performance
22   of the plaintiff's production?
23              MR. SCHWARTZ:  Of course we can now that  that's
24   been verified.
25              THE COURT:  Okay.
```

```
 1                          PROCEEDINGS                13

 2             MR. SCHWARTZ:  But it would seem that that's

 3    putting the burden on me to do, and all I'm requesting  is

 4    that it's just as easy for them to verify -- it's  easier

 5    for them to verify that to me than it is for me to have

 6    to --

 7             THE COURT:  But verifying something in  writing

 8    seems more imprecise than saying, "Here is exactly  version

 9    A, here is exactly version B, A being yours, B being  ours;

10    there you are."  And you can figure out how much you  think

11    it's the same, they can figure out how much they think  it's

12    the same, and you can argue about that later if you  need

13    to.

14             MR. SCHWARTZ:  Okay, then that's what we'll  do.

15             THE COURT:  Okay.  So let me ask a  separate

16    question of plaintiff on this side-to-side  analysis

17    concept.  Are you saying the Court should be able,  without

18    discovery -- including expert discovery -- should be  able

19    to put music side by side and figure it out  for itself?  Or

20    is music not the issue here because you  --

21             MR. GREENBERGER:  Music has not been the  issue

22    from our perspective, but what I'm suggesting to the  Court

23    is the Court can sit and watch the YouTube performance  and

24    read the script of "Vape" and then sit and watch the  movie

25    version of "Grease" --
```

PROCEEDINGS                    14

 1
 2          THE COURT:  An enjoyable time for --
 3          MR. GREENBERGER:  -- upon which it's based.
 4          THE COURT:  An enjoyable time for the Court.
 5          MR. GREENBERGER:  That's what I did before I  took
 6  the case in order to analyze it.  That's how I drafted the
 7  complaint.  I mean, it would require two and a half  hours
 8  of the Court's time to sit and watch the movie and  watch
 9  the approximately one-hour YouTube thing.  You watch it --
10  I mean, it's plainly apparent to me that it's a  parody.
11  And then you read the case law.  You read the *Lombardo*
12  case, you read the *Adjmi* case.  I mean, there are so  many
13  parody cases that I could site; there's cases  involving
14  music from Mad Magazine in the 1950s or '60s; there's  a
15  Saturday Night Live case --
16          THE COURT:  All right, so the cases that  involve
17  music did not involve any experts or special discovery  on
18  it?
19          MR. GREENBERGER:  To my recollection, they  don't
20  because it's whether a reasonably -- a parody can  be
21  reasonably perceived.  In fact, the case that I cited in  my
22  supplemental letter to the Court the other day, that  was
23  exact copying.  That was political speech; it was fair  use,
24  but it was literally exact copying of the  plaintiff's
25  video, just 20% of the original video.  There was  no

```
 1                       PROCEEDINGS               15
 2   commentary other than the title of the  new work.  And the
 3   Court, Judge Sullivan, said this is literally the  exact
 4   same video, but I'm calling it fair use because the  context
 5   in which it appears, one person is an  uber-right
 6   commentator on YouTube, the other person's an  uber-left
 7   person, and all people need to know is  that context.  And
 8   so that's our position is that when you watch it in  context
 9   and you hear the music, it's clear that you're  allowed
10   to -- for purposes of parody the Supreme Court has  said
11   you're allowed to conjure up  the original.  That's the
12   whole point is to make fun of it and jab  at it.  So I don't
13   think it's really an issue.
14               THE COURT:  Okay.  So it seems to me that  the
15   parties are basically in agreement that discovery's  not
16   needed here.  The one exception that defendant has
17   described to me doesn't seem like there's much to it,  given
18   what has already been provided voluntarily.  So I will  stay
19   discovery.  I'd like to ask you to please just let us  know
20   in my chambers when the motion to dismiss is  decided
21   because we should get a notice electronically; but just  in
22   case we miss it, I don't want to lose track of your  case.
23   If that motion is denied and the case goes forward, then  I
24   just want to be aware so that I can track what's going  on.
25   I don't think I would lift the stay at that point  because
```

```
 1                          PROCEEDINGS                  16
 2   at that point I think you would get the pleadings all  in,
 3   and you'd end up with a motion for judgment on  the
 4   pleadings.
 5          Is there any possibility of just settling  this
 6   without all -- without Judge Swain having to decide  this
 7   motion, without the parties have to, if the motion,  you
 8   know, is denied, the parties going to another round  of
 9   motion practice?  It seems to me that if defendants  are
10   saying that if the motion is dismissed, they would  live
11   with that -- that seems to be what you're saying -- only  if
12   the motion is denied would they start fighting tooth  and
13   nail.  It seems to me you ought to be able to live  with
14   some amicable resolution of this without a lot of  fighting.
15          MR. SCHWARTZ:  I'm not saying that -- in
16   answer -- to respond only to the first part of your  Honor's
17   comments -- I'm not committing that the defendants  would
18   live with it.  I'm saying they withdrew the  offensive
19   cease-and-desist.  There were substantial  settlement
20   proposals from the entity that sent the  cease-and-desist
21   letter.  There was a counterproposal by plaintiff that  was
22   so extraordinarily off the wall, to use a  colloquialism,
23   that that's where we are now.  The --
24          THE COURT:  Well, let me --
25          MR. SCHWARTZ:  -- settlement proposal  initially
```

```
 1                         PROCEEDINGS                    17
 2   made was --

 3              THE COURT:  Wait.  Hold on a second.
 4              MR. SCHWARTZ:  Sure.
 5              THE COURT:  Let me just back up a second  before
 6   we talk about settlement.  I said I would stay  discovery.
 7   Is that really the right way to go about it, or should  I
 8   just say there will be no discovery, there is no need  for
 9   discovery, period, and let Judge Swain know that I  don't
10   think there's a need for discovery in this case, that  this
11   should be resolved without discovery?  Because a stay,  the
12   concept is at some point it gets lifted.  And what might
13   change along the way that might cause me to rethink  this
14   and think discovery really is needed; is there  anything?
15              MR. GREENBERGER:  Not that I can think of,  your
16   Honor, and I think that's a good clarification, that  "stay"
17   implies that there might be discovery in the future, and  --
18              THE COURT:  Stay is generally you're holding  off
19   until something happens.
20              MR. GREENBERGER:  Right.  And I don't think  there
21   is any need for discovery under any  circumstances.
22              THE COURT:  As I was thinking about it,  I
23   thought, all right, what could happen.  What could  happen
24   is the motion is denied, the case goes forward to the  next
25   stage.  There would still not be a need for  discovery
```

```
 1                          PROCEEDINGS                18
 2  because you'd be in the land of judgment on the  pleadings.
 3  Only if motion for judgment on the pleadings is  then
 4  denied --
 5            MR. GREENBERGER:  I suppose -- well, that  motion
 6  I think would be made to Judge Swain as a  dispositive
 7  motion.
 8            THE COURT:  Right.
 9            MR. GREENBERGER:  And if she were to deny it  and
10  say, you know, there's questions of fact that I --  or
11  questions that I have, then I suppose in  that
12  circumstance --
13            THE COURT:  Maybe what I do is I say there'll  be
14  no discovery, and if circumstances change along the  way
15  somehow where someone is able to identify the need for  some
16  discovery, you will come back to me and let me know  what
17  that is and why and what the context  is.
18            MR. SCHWARTZ:  That's reasonable.  I was going to
19  add, only again because I'm very nervous about the  music,
20  and then plaintiff's lawyer said that it wasn't his  music,
21  there was really a separate musical arrangement,  I'm
22  nervous about -- nervous on behalf of defendants --  about
23  the music.  And the only reason why the -- one of  the
24  reasons why the music is important is because, as  my
25  adversary said, the case law says you can only --  you
```

1                              PROCEEDINGS                    19

2  should only take as much of the original as you need  to

3  conjure up and then to make  a parody.  So we think, we  on

4  the defense side, that they took everything from  the

5  plaintiff, including the music.  So the music is  an

6  important part if they've taken  everything.

7              THE COURT:  So quick question.  If the case were

8  to go forward and you were to counterclaim, would you  also

9  seek to bring in other defendants on a counterclaim  who

10  were involved with the music?

11              MR. SCHWARTZ:  Yes.  I think -- and I'm not  sure

12  because I don't have discovery -- so this was the  first

13  I've heard that the music was created by an outside  party

14  and not necessarily them -- and I've notified the  plaintiff

15  that -- and it's in the record, it's on the videos -- that

16  they've used the names of Jacobs and Casey, the two  authors

17  of the play.  And that's a violation of the Civil  Rights

18  Law in New York.  You can't use somebody's name  without

19  written permission, and that's regardless or separate  and

20  aside from a fair use.  So I've told them that if  there

21  is -- if the case goes forward, when we would  counterclaim

22  against them for use of the names.  And I'm not  sure

23  who -- I'm not sure which individuals we would then  seek

24  to bring in for use of  those names.  So --

25              THE COURT:  So when you withdrew the

```
 1                         PROCEEDINGS              20
 2   cease-and-desist letter, you didn't think about sending a
 3   new letter that said, "Look, for now we're just asking you
 4   to remove the use of these names"?
 5              MR. SCHWARTZ:  Based off the lawsuit on a Friday,
 6   the decision -- so all this occurred, I think, within a
 7   week, essentially; the cease-and-desist went out, and then
 8   within a week or a very short period of time the  principal
 9   who my adversary mentioned, the principal transactional  guy
10   was away for the birth of his granddaughter, and so when  he
11   came back, he saw that the letter was sent out, so that  he
12   consulted with Concord, the third party here, and they  --
13   and it was determined that they would withdraw the  cease-
14   and-desist.  On Friday the plaintiff filed the lawsuit,  and
15   the cease-and-desist went out on Monday.  So hyper-
16   technically, the cease-and-desist was after the filing  of
17   the initial complaint.  To add another nuance to it,
18   thereafter, they amended the complaint, which  supersedes
19   the first complaint, so that as of the date of  the
20   operative pleading, the amended complaint, there was  no
21   cease-and-desist; it didn't have to even be  withdrawn
22   because it had already been  withdrawn.
23              So there are two parts to the plaintiff -- to  the
24   defendants' --
25              THE COURT:  Okay, here's what I'm going to  do
```

```
 1                          PROCEEDINGS                21
 2  with respect to discovery.  I'm going to say no discovery
 3  with leave to reopen or open discovery if the motion  to
 4  dismiss is denied and if a counterclaim is filed and if  the
 5  counterclaim in some way gives rise to the need  for
 6  discovery.  And I can hear from you on that  subject
 7  when -- if there is a counterclaim.  Because I don't  know
 8  what its shape will be, I don't know who might be  brought
 9  in as defendants, I don't know what issues might be  raised
10  on that.  It's not part of the case currently.  All right?
11          MR. GREENBERGER:  Your Honor, I'd just say that
12  if they do counterclaim, I intend to make a motion  to
13  dismiss those counterclaims.  So it wouldn't be until that
14  motion is --
15          THE COURT:  Well, that's fine, but you don't  know
16  what the counterclaim would have in it, either, because  you
17  don't have it yet.  So you don't know who's going to be
18  named, you don't know if you're going to represent  --
19          MR. GREENBERGER:  That's true.
20          THE COURT:  -- the people who are  named.
21          MR. GREENBERGER:  Correct.
22          THE COURT:  There's a lot of  unknown there.  And
23  if new parties are named and new claims under new  statutes
24  are raised under state law or something like that,  who
25  knows whether there could be facts that could be  relevant
```

```
 1                        PROCEEDINGS              22
 2  and where discovery could be appropriate.  So no discovery
 3  but leave to come back and seek discovery on a  counterclaim
 4  if there is one in the case, one or more in the  case.
 5            Okay, now, with respect to settlement, what  I'm
 6  going to do is go off the record so we can talk  about
 7  settlement off the record.  All right?  We're off.
 8            (Off/on the record)
 9            THE COURT:  All right, we're going back on  the
10  record so that Mr. King --
11            MR. KING:  Correct.
12            THE COURT:  -- can raise some other  issue.
13            MR. KING:  For Vanguard National  Trust.
14            I just wanted to flag one issue for your  Honor.
15  I don't believe it's controversial.  But the Casey  Trust
16  beneficiaries have appointed special trustees who  control
17  the Casey interest in the Grease copyright.  Vanguard  does
18  not, and we've communicated that to plaintiff's  counsel.
19            The parties have agreed that, if the motion  to
20  dismiss is denied, the pleadings will be amended to add  the
21  special trustees.  That's for another day.  And we'll
22  further -- again, if the motion to dismiss is denied,  we'll
23  have further discussions with the plaintiff's counsel as  to
24  whether Vanguard should even be in the case at that  point.
25  But I wanted to flag the issue about the  amendment.
```

```
 1                         PROCEEDINGS                   23
```

 2          THE COURT:  You ought to be able to work that  out

 3  by stipulation if you just want to make sure you've got  the

 4  right parties.

 5          MR. KING:  And we have stipulated to add  the

 6  special trustees.  Whether Vanguard remains part of the

 7  case, that will await --

 8          THE COURT:  I'm sure --

 9          MR. KING:  -- and whether we can get -- stipulate

10  in that regard, we'll await further discussions with  the

11  plaintiff.

12          THE COURT:  I'm sure both sides have an  interest

13  in just getting the right parties named and the  wrong

14  parties not named.  So --

15          MR. KING:  Correct.

16          MR. GREENBERGER:  Your Honor, that's correct.

17  And what's been communicated to me is not that Vanguard  is

18  an improper party; it's just that there are these  special

19  trustees and with one of Mr. King's colleagues I  briefly

20  spoke about it, and we emailed, and I said you just  sending

21  me an email with a few sentences doesn't establish this  to

22  me.  If you want to show me some documents or, you  know,

23  basically put together a motion so I could see what  you're

24  saying, like, I don't know if they're necessary parties  or

25  unnecessary parties or anything.  And so I just said I'm

1                              PROCEEDINGS                    24

2    fine; I just want the party in interest, the people who  own

3    the copyrights in "Grease."

4         THE COURT:  So with respect to discovery, you

5    just said, "If you want to show me  some documents."  You

6    need discovery as to who the right parties  are?

7         MR. GREENBERGER:  No.  What was represented to  me

8    was that Vanguard is a proper party, but there are  special

9    trustees or sub-trustees who really make the decisions  with

10   respect to "Grease" --

11        THE COURT:  So you don't want to --  now this has

12   been flagged -- you don't want to serve an interrogatory  or

13   something or ask for some documents to pin this down  to

14   make sure you have the right  parties?

15        MR. GREENBERGER:  They're not disputing that I

16   have the right party, and I don't think Mr. King  is

17   disputing that Vanguard is a proper  party here.  And

18   Vanguard is the trustee, as I understand it, and there  are

19   just other people who work with them with respect to --  but

20   it's not that Vanguard isn't the copyright owner or  the

21   owner of the interest in  the copyright.  And he can  clarify

22   that --

23        THE COURT:  I'm sorry, Mr. King, I thought  you

24   were suggesting that he's got the wrong party  named?

25        MR. KING:  Well, Vanguard is the trustee, but  the

```
 1                         PROCEEDINGS                  25
 2   special trustees control the copyright.
 3            THE COURT:  So why would you say Vanguard  should
 4   be dropped?
 5            MR. KING:  Because the special trustee --
 6   Vanguard doesn't have control over the Casey interest  in
 7   the "Grease" copyright.  I think we can --
 8            THE COURT:  Does it potentially have liability  on
 9   a declaratory judgment action?  Would it have to be --
10   would it have to be named in a declaration by the  Court?
11            MR. KING:  I don't know the answer to that.  And
12   my point is, is that if the motion to dismiss is denied,  we
13   conceivably or could possibly work it out with  the
14   plaintiff's counsel to drop Vanguard.  But that's something
15   for another day if the motion to dismiss is  denied.
16            THE COURT:  Okay, look, if the motion to  dismiss
17   is denied and anybody needs or wants discovery  regarding
18   not fair use but who the right parties are, talk to  each
19   other informally first; see if you can satisfy your  needs
20   through informal discovery voluntarily.  If you can't, you
21   come back to me, and it's another reason to open  discovery
22   if you, you know, can't get to the bottom  of that.  If you
23   need a deposition of somebody to explain who the  right
24   party is, you'll tell me that, and the door will open  again
25   for that.  All right?
```

1                           PROCEEDINGS                      26

2              Now can we talk about settlement?

3              MR. GREENBERGER:  Sure.

4              THE COURT:  Anything else before we go off the

5    record again?

6              All right, off the record for settlement talk.

7              (Whereupon, the matter is adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

# C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of Sketchworks

Industrial Strength Comedy, Inc. v. Jacobs et al,

Docket #19-cv-07470-LTS-DCF, was prepared using digital

transcription software and is a true and accurate record of

the proceedings.

Signature_____*Carole Ludwig*_____

Carole Ludwig


            Date:    February 28, 2020