UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKETCHWORKS INDUSTRIAL STRENGTH COMEDY, INC., | Case No. 1:19-cv-07470-LTS |
| Plaintiff, | |
| -against- | |
| JAMES H. JACOBS, AS TRUSTEE OF THE JAMES H. JACOBS TRUST, and RICHARD CASEY, PEGGY ANN ADAMS, MARTHA BOMBARDI, LEONARD CASEY AND LINDA CASEY, AS TRUSTEES OF THE WARREN CASEY TRUST UNDER WILL, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**


J. GREENBERGER, PLLC
*Counsel for Plaintiff*
Jordan Greenberger, Esq.
*Mailing*: 41 Watchung Plaza, #334, Montclair, NJ 07042
NY: 500 Seventh Avenue, 8th Floor, NY, NY 10018
Tel: (718) 502-9555
jordan@jgreenbergerlaw.com

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................... 1

II.    A DECISION "ON THE PLEADINGS" IS APPROPRIATE ...................................... 3

III.   *VAPE* IS COPYRIGHT FAIR USE ................................................................ 5

    A.  FIRST FACTOR: PURPOSE AND CHARACTER OF THE USE ................................... 6

        1.  *Vape* Is A Parody Of *Grease* .......................................................... 7

        2.  *Vape* is Highly Transformative ......................................................... 9

        3.  Commercial Use........................................................................... 11

    B.  SECOND FACTOR: NATURE OF THE COPYRIGHT WORK ...................................... 11

    C.  THIRD FACTOR: AMOUNT AND SUBSTANTIALITY OF USE ................................... 12

        1.  Alleged Note-For-Note Copying Of Songs .................................... 13

        2.  Usage Of The Same Names And Locations & Allegedly Similar Plot ...... 14

    D.  FOURTH FACTOR: EFFECT ON POTENTIAL MARKET FOR COPYRIGHTED WORK(S)............ 16

IV.    DEFENDANTS' TRADEMARK INFRINGEMENT CLAIM IS MERITLESS...... 18

V.     THE RIGHT OF PRIVACY CLAIM IS ALSO MERITLESS ................................... 21

VI.    CONCLUSION ..................................................................................... 23

//

# TABLE OF AUTHORITIES

## CASES

*Abilene Music, Inc. v. Sony Music Entm't, Inc.*, 320 F. Supp. 2d 84 (S.D.N.Y. 2003) ...... 8, 11, 12

*Adjmi v. DLT Ent. Ltd.*, 97 F. Supp. 3d 512 (S.D.N.Y. 2015) ........................................................ 2

*Altbach v. Kulon*, 754 N.Y.S.2d 709 (3ʳᵈ Dep't 2003) .................................................................. 22

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99 (2d Cir. 2021) ............. 2

*Arrow Productions Ltd. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359 (S.D.N.Y. 2014) .................. 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 17

*Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) .................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 17

*Berlin v. E.C. Publications, Inc.*, 329 F.2d 541 (2nd Cir. 1964) .............................................. 5, 9

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006) .................... 2, 11

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) .............................................................................. 5

*Brown v. Netflix, Inc.*, No. 20-2007, 2021 WL 1976614 (2d Cir. May 18, 2021) ........................ 4

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ...................... passim

*Campbell v Acuff-Rose Music, Inc.*, 510 U.S. 569(1994) ........................................................ passim

*Cariou v Prince*, 714 F.3d 694 (2d Cir. 2013) .............................................................................. 2

*CCA & B, LLC v. F+W Media Inc.*, 819 F. Supp. 2d 1310 (N.D. Ga. 2011) ....................... passim

*Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 335 (S.D.N.Y. 2000) .................. 19

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490 (2d Cir. 1989) ... 3, 18, 19

*Conan Properties, Inc. v. Mattel, Inc.*, 712 F. Supp. 353, 361 (S.D.N.Y. 1989) ......................... 15

*Damron v. Doubleday, Doran & Co.*, 231 N.Y.S. 444 (Sup. Ct., NY Co. 1928) ......................... 23

*Davis v. High Soc. Mag., Inc.*, 457 N.Y.S.2d 308 (2d Dep't 1982) .............................................. 22

*DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015) ..................................................... 15

*Durham Industries v. Tomy Corp.*, 630 F.2d 905 (2nd Cir. 1980) ................................................ 18

*Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538 (S.D.N.Y. 2013), *aff'd* 564 Fed. Appx. 631 (2nd
    Cir. 2014) ............................................................................................................................. 3

*Elsmere Music, Inc. v. NBC*, 482 F. Supp. 741 (S.D.N.Y. 1980), *aff'd* 623 F.2d 252 (2d Cir.
    1980) ......................................................................................................................... 5, 14

*Estate of James O. Smith v. Cash Money Records, Inc.*, 253 F. Supp. 3d 737 (S.D.N.Y. 2017) ... 9

*Finger v. Omni Publications Int'l, Ltd.*, 566 N.E.2d 141 (N.Y. 1990) ......................................... 22

*Fioranelli v. CBS Broadcasting Inc.*, 232 F.Supp.3d 531 (S.D.N.Y. 2017)................................ 18

*Foster v. Svenson*, 7 N.Y.S.3d 96 (1st Dept 2015) ........................................................... 3

*Frank v. Nat'l Broad. Co.*, 506 N.Y.S.2d 869 (2d Dept 1986) ........................................... 3

*Galvin v. Illinois Republican Party,* 130 F. Supp. 3d 1187 (N.D. Ill. 2015) ................................. 4

*Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021)........................................................ passim

*Hoepker v. Kruger*, 200 F. Supp. 2d 340 (S.D.N.Y. 2002) ........................................................ 22

*Hughes v. Benjamin*, 437 F.Supp.3d 382 (S.D.N.Y. 2020) ............................................................ 3

*Keeling v. Hars*, 809 F.3d 43 (2d Cir. 2015) ..................................................................... 5, 8

*Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042 (W.D. Wis. 2013)..................................... 9

*Kouf v. Walt Disney Pictures & TV*, 16 F.3d 1042, 1046 (9th Cir. 1994) ..................................... 15

*Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir. 1998)................................. 5, 9, 10

*Lohan v. Perez*, 924 F. Supp. 2d 447 (E.D.N.Y. 2013) ..................................................... 4, 22, 23

*Lombardo v. Dr. Seuss Enterprises, L.P.*, 279 F. Supp. 3d 497 (S.D.N.Y. 2017), *aff'd*, 729 F.
    App'x 131 (2d Cir. 2018)................................................................................................. passim

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) 4

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425 (S.D.N.Y. 2016), *aff'd*
674 Fed. Appx. 16 (2nd Cir. 2016) ................................................................................... 19, 21

*Mattel, Inc. v. Pitt*, 229 F. Supp. 2d 315 (S.D.N.Y. 2002) ........................................................ 5, 12

*Mattel, Inc. v. Walking Mountain Production*s, 353 F.3d 792 (9th Cir. 2003).................... 2, 5, 18

*Medina v. Dash Films, Inc.*, 2016 WL 3906714 (S.D.N.Y. July 14, 2016) .................................. 4

*Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 727 N.E.2d 549 (2000) ... 22, 23

*Montgomery v. Holland*, 408 F. Supp. 3d 353 (S.D.N.Y. 2019) ................................................... 4

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.33d 57 (2d Cir. 2010) ... 4

*Polaroid v. Polared Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961)................................................. 21

*Roberts v. Bliss*, 2017 WL 354186 (S.D.N.Y. Jan. 24, 2017) ...................................................... 4

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)................................................................... 3, 18

*Rosenfeld v. W.B. Saunders, a Div. of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236
(S.D.N.Y.), *aff'd sub nom. Rosenfeld v. Saunders*, 923 F.2d 845 (2d Cir. 1990) ................... 21

*Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1177-80 (C.D. Cal. 2016)...................... 15

*SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257 (11th Cir. 2001) ..................... 2, 5, 12, 14

*Swatch Group Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014) ........................ 3

*TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016)........................................ passim

*Tetley, Inc. v. Topps Chewing Gum, Inc.*, 556 F. Supp. 785 (E.D.N.Y. 1983)............................ 19

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410 (S.D.N.Y. 2002)..... 19

*Trec v. Cazares*, 128 N.Y.S.3d 251 (2d Dep't 2020)..................................................................... 4

*Twentieth Century Fox TV v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017)................... 18

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993)...................... 21

*Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*, 256 N.Y.S.2d 301 (1st Dep't 1965), *aff'd* 207 N.E.2d 508 (N.Y. 1965) ............................................................................... 23

*Walter v. NBC Television Network, Inc.*, 811 N.Y.S.2d 521 (4th Dept 2006) ............................. 3

*Warner Bros. Inc. v. Am. Broadcasting Companies, Inc.*, 720 F.2d 231 (2nd Cir. 1983) ....... 15, 18

*Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537 (S.D.N.Y. 2019)................................................. 4

*Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267 (S.D.N.Y. 1992).............................. 19

<u>STATUTES</u>

17 U.S.C. § 107................................................................................................................ 1, 5, 6, 12

N.Y. Civil Rights Law §§ 50-51 ................................................................................................ 3, 21

<u>TREATISES</u>

44 N.Y. Jur. 2d Defamation and Privacy § 303 ......................................................................... 22

44 N.Y. Jur. 2d Defamation and Privacy § 329 ......................................................................... 22

6 McCarthy on Trademarks and Unfair Competition § 31:153 (5th ed.) .................................... 19

Patry on Copyright § 10:91 ........................................................................................................... 8

Patry on Fair Use § 3:94 ............................................................................................................... 9

<u>CONSTITUTIONAL PROVISIONS</u>

U.S. Constitution, Art. I, § 8, cl. 8 ................................................................................................ 5

Plaintiff Sketchworks Industrial Strength Comedy, Inc. ("Sketchworks" or "Plaintiff"), by its undersigned counsel, respectfully submits this memorandum of law in support of its Fed R. Civ. P. 12(c) motion for judgment on the pleadings.

## I.    PRELIMINARY STATEMENT

Sketchworks' play *Vape: The Musical* ("*Vape*") does not infringe upon Defendants' copyright in the musical play *Grease* because *Vape* is a parody of *Grease* and therefore constitutes fair use under the Copyright Act of 1976 (17 U.S.C. § 107).  Sketchworks should be granted judgment on the pleadings so that Sketchworks may continue performing and otherwise exploiting *Vape* without the cloud of Defendants' infringement claims.

Defendants' position is, in short, that *Vape* is not fair use because: (a) *Vape* uses the same character and location names as *Grease* (e.g., Rydell High, Danny, Sandra) (Counterclaims, ¶¶ 14-16,21, 26); (b) the music in *Vape* allegedly copies certain songs from *Grease* note-for-note, excluding the lyrics (*id.*, ¶¶ 12-13, 17, 21, 37); and (iii) the plot arc and theme are allegedly similar (*id.*, ¶¶ 16, 21, 26, 37).  But even accepting Defendants' allegations as true on this Rule 12 motion, neither the usage of the same names or copied music removes *Vape* from the realm of fair use and any similarity in the plot arc and theme are used for parodic purposes and plainly transformative.

Parodies are allowed to refer to the original; the humor and comment "necessarily springs from recognizable allusion to its object through distorted imitation." *Campbell v Acuff-Rose Music, Inc.*, 510 U.S. 569, 580-81, 588 (1994); *see also Lombardo v. Dr. Seuss Enterprises, L.P.*, 279 F. Supp. 3d 497, 507 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012); *SunTrust Bank v. Houghton*

*Mifflin Co.*, 268 F.3d 1257 (11th Cir. 2001); *CCA & B, LLC v. F+W Media Inc.*, 819 F. Supp. 2d 1310 (N.D. Ga. 2011).

As to the music, use of the entirety of the underlying work is permissible when the new usage is transformative.  *See*, *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1203 (2021); *Cariou v Prince*, 714 F.3d 694, 710 (2d Cir. 2013), holding modified by *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99 (2d Cir 2021); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 98 (2d Cir. 2014); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006).  Context is key.

And to the extent that the court finds that *Vape* has the same or similar plot arc, style and theme(s) as *Grease*, *Vape* is still a fair use because it is a transformative parody.  *Adjmi v. DLT Ent. Ltd.*, 97 F. Supp. 3d 512, 530-31 (S.D.N.Y. 2015); *Brownmark*, *supra*; *SunTrust*, *supra*; *CCA & B*, *supra*.

Defendants have also asserted counterclaims alleging trademark infringement and violation of defendant Jim Jacobs' right of privacy under New York law.  Mr. Jacobs is one of the authors of *Grease* (his co-author's heirs are the other defendants).  These counterclaims arise out of: (i) the use of the word "GREASE" and Mr. Jacobs' name in an opening-credits slide of *Vape* that states, "Based on GREASE by Jim Jacobs and Warren Casey" (video at approx. 2 min., 10 seconds), and (ii) Plaintiff's use of the word "Grease" in advertisements for *Vape* identifying it as, "A LIVE MUSICAL PARODY OF GREASE!" (Answer to Counterclaims, ¶¶ 30, 46).  But Defendants cannot use the trademark and privacy claims as a backdoor around copyright fair use.  *Lombardo*, *supra*; *Mattel, Inc. v. Walking Mountain Production*s, 353 F.3d 792 (9th Cir. 2003).

The public interest in free expression and parody outweighs the (non-existent) risk of consumer confusion between *Vape* and *Grease*. Plaintiff's use of the word "Grease" is artistically relevant (*Vape* is a parody of *Grease*), and Plaintiff's use of the mark does not explicitly mislead as to the source or content of the work. *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490 (2d Cir. 1989).

Further, works of art fall outside the prohibitions of the privacy statute, N.Y. Civil Rights Law §§ 50-51. *Foster v. Svenson*, 7 N.Y.S.3d 96 (1st Dept 2015); *Walter v. NBC Television Network, Inc.*, 811 N.Y.S.2d 521, 523 (4th Dept 2006); *Frank v. Nat'l Broad. Co.*, 506 N.Y.S.2d 869, 873 (2d Dept 1986). Additionally, the brief appearance of Mr. Jacobs' name in the context of the whole work precludes the claim, *infra*.

Accordingly, Sketchworks should be awarded a judgment on the pleadings.

## II.    A DECISION "ON THE PLEADINGS" IS APPROPRIATE

To decide this case, the court need simply compare *Vape* with *Grease*, and consider relevant copyright and trademark law. "Numerous courts in this district have resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue." *Lombardo*, 279 F. Supp. 3d at 504, citing *Swatch Group Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014); *Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538 (S.D.N.Y. 2013), *aff'd* 564 Fed. Appx. 631 (2nd Cir. 2014); *Arrow Productions Ltd. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359 (S.D.N.Y. 2014), and *Adjmi*, 97 F. Supp. 3d at 526-27. *See also*, *Hughes v. Benjamin*, 437 F.Supp.3d 382, n.1 (S.D.N.Y. 2020) (granting Rule 12(b)(6) motion to dismiss copyright infringement claim on basis of fair use).

Just last month, in *Brown v. Netflix, Inc.*, No. 20-2007, 2021 WL 1976614 (2d Cir. May 18, 2021), the Second Circuit affirmed the district court's fair use determination on a Rule 12 motion and rejected the plaintiff's argument that it was premature to decide fair use at the pleadings stage.  *See also*, *Brownmark, supra* (finding at a fleeting glance that the "South Park" episode at issue was a parody of an internet viral video); *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537 (S.D.N.Y. 2019) (granting Rule 12(b)(6) motion to dismiss copyright infringement claim on basis of fair use); *Galvin v. Illinois Republican Party,* 130 F. Supp. 3d 1187 (N.D. Ill. 2015) (granting a Rule 12(b)(6) motion to dismiss on fair use grounds); Magistrate Judge Scheduling Order, dated February 26, 2020 [Doc. 39].[1]

The First Amendment issues raised by Defendants' trademark and privacy claims may also be decided at the pleadings stage.  *Lombardo*, *supra*; *see also Roberts v. Bliss*, 2017 WL 354186, at *7 (S.D.N.Y. Jan. 24, 2017); *Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *1 (S.D.N.Y. July 14, 2016); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012); *Lohan v. Perez*, 924 F. Supp. 2d 447 (E.D.N.Y. 2013); *accord*, *Trec v. Cazares*, 128 N.Y.S.3d 251, 254 (2d Dep't 2020) (dismissing right of privacy claim at the pleadings stage).

*Vape* and *Grease* are referenced and incorporated by reference in the Complaint. Defendants' answer and counterclaims repeatedly refer the Court to the works.  As pleaded (Compl., ¶ 1), a performance of *Vape* is available online at https://youtu.be/ex0_zjaIeRs and a video of that performance is also being filed with the Court as Exhibit 2 to this motion.  *Vape* is

---

[1] *Accord*, *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.33d 57 (2d Cir. 2010) (copyright infringement claim resolved on a Rule 12 motion); *Montgomery v. Holland*, 408 F. Supp. 3d 353 (S.D.N.Y. 2019) (granting  Rule 12 motion after comparing subject works and concluding they were not substantially similar).

based upon the popular film version of *Grease* (Compl., ¶ 9), and a DVD of that film is also being submitted to the Court as Exhibit 3. Plaintiff requests that the Court simply watch *Grease* and then *Vape* to decide this motion.

## III.    *VAPE* **IS COPYRIGHT FAIR USE**

*Vape* is copyright fair use, and is aligned with the fair use findings for: the play in *Lombardo*; the play in *Adjmi*; twenty-five of Richard Prince's photographs in *Cariou*; the "South Park" episode in *Brownmark*; the usage of Barbie dolls in *Mattel Inc. v. Walking Mountain Prods.*, *supra*, and *Mattel, Inc. v. Pitt*, 229 F. Supp. 2d 315 (S.D.N.Y. 2002); Saturday Night Live's "I Love Sodom" song in *Elsmere Music, Inc. v. NBC*, 482 F. Supp. 741 (S.D.N.Y. 1980), *aff'd* 623 F.2d 252 (2d Cir. 1980); the poster for the "Naked Gun" movie in *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir. 1998); Mad Magazine's parody of Tin Pan Alley songs in *Berlin v. E.C. Publications, Inc.*, 329 F.2d 541 (2nd Cir. 1964); and "The Wind Done Gone" work in *SunTrust*.

Defendants cannot control the market for parodies of *Grease*. *Campbell*, 510 U.S. at 592. A ruling that precludes Sketchworks from exploiting *Vape* is contrary to the fundamental purpose of copyright law: to promote the arts and sciences. *Google*,141 S. Ct. at 1195 (citing U.S. Constitution, Art. I, § 8, cl. 8); *also Keeling v. Hars*, 809 F.3d 43, 50 (2d Cir. 2015). Defendants' copyright interests are not an inevitable, divine, or natural right that confers Defendants with absolute rights in *Grease*. *Cariou*, 714 F.3d at 705. Any copyrightable elements of *Grease* that are used in *Vape* are used for purposes of parody and/or in an otherwise highly transformative manner, and thus represent a non-infringing fair use. 17 U.S.C. § 107.

The determination of copyright fair use "is an open-ended and context-sensitive inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). There are no "bright-line rules" and fair use

requires a "case-by-case analysis." *Campbell*, 510 U.S. at 577.  The fair use doctrine is "an equitable rule of reason that permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Google*, 141 S. Ct. at 1196.

"The statutory provision that embodies the doctrine indicates, rather than dictates, how courts should apply it." *Google*, 141 S. Ct. at 1196.  Section 107 of the Copyright Act provides:

> [T]he fair use of a copyrighted work, … for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.  In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> > (1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> >
> > (2)  the nature of the copyrighted work;
> >
> > (3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> >
> > (4)  the effect of the use upon the potential market for or value of the copyrighted work.  [17 U.S.C. § 107].

In applying this provision of the Copyright Act, courts have understood that the provision's list of factors is not exhaustive, that the examples it sets forth do not exclude other examples, and that some factors may prove more important in some contexts than in others. *Google*, 141 S. Ct. at 1197.  The concept of fair us "is flexible" and "courts must apply it in light of the sometimes conflicting aims of copyright law". *Id.*

**A.  First Factor: Purpose and Character of the Use**

The first factor "requires courts to consider the extent to which the secondary work is 'transformative,' as well as whether it is commercial." *Andy Warhol Found.*, 992 F.3d at 109. "In this regard, the uses identified by Congress in the preamble to § 107 – criticism, comment,

news reporting, teaching, scholarship, and research – might be deemed most appropriate for a purpose or character finding indicative of fair use." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 179 (2d Cir. 2016) (cit. om.). But, "[t]he law imposes no requirement that a work comment on the original or its author in order to be considered transformative, and a secondary work may constitute a fair use even if it serves some purpose other than those…identified in the preamble to the statute." *Cariou*, 714 F.3d at 706.

The court's assessment of this first factor should focus "chiefly on the degree to which the use is 'transformative,' i.e., 'whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *Andy Warhol Found.*, 992 F.3d at 109-10. The court should "evaluate whether a work is transformative by examining how it may 'reasonably be perceived.'" *Id.*

"As recognized by the Supreme Court in *Campbell*, parody, which 'needs to mimic an original to make its point," 510 U.S. at 580-81, is routinely held transformative." *Id.*, 992 F.3d at 110 (citing *Brownmark*, *supra*); *see also Lombardo*, *supra*.

1. *Vape* Is A Parody Of *Grease*

"One type of protected creativity is parody, a recognized category of criticism or comment authorized by Section 107." *Adjmi*, 97. Fupp. 3d at 530. Parody "invariably comment[s] on an original work and/or on popular culture." *Cariou*, 714 F.3d at 706.

"[P]arody, like any other use, has to work its way through the relevant factors, and be judged case by case, in light of the ends of copyright law." *Campbell*, 510 U.S. at 580. However, "once a work is determined to be a parody, the second, third, and fourth factors are unlikely to militate against a finding of fair use." *Abilene Music, Inc. v. Sony Music Entm't, Inc.*,

7

320 F. Supp. 2d 84, 89 (S.D.N.Y. 2003); *Keeling*, 809 F.3d at 53 ("the first factor … lies at the 'heart of the inquiry' for parody, while the other three factors are much less important").

The parodic character of *Vape* is clear. *Campbell*, 510 U.S. at 580. *Vape* imitates the style of *Grease* for comic effect or ridicule, and reasonably may be perceived as commenting on *Grease* or criticizing it. *Vape* uses millennial slang, popular culture, a modern lens, and exaggeration to comment upon the plot, structure, issues and themes of *Grease* and to criticize its misogynistic and sexist elements. *Vape*, which was written and directed by women and has a largely female cast, reexamines *Grease* from a female perspective in the #MeToo era and exposes how the "humor" and rape-culture elements of *Grease* have not aged well. *Vape* directly criticizes *Grease*'s "happy ending," where a woman completely changes who she is in order to please a man.

At the same time, *Vape* recognizes that modern youth still navigate complex issues relating to sex, drugs, and peer pressure – just in different forms from their 1950s counterparts. *Vape* not only comments upon controversial themes in *Grease*, it also explores whether modern society has progressed at all by pointing to current systemic issues that still exist based on the misogyny of the era in which *Grease* was written and is set. "A parody can legitimately comment on general aspects of society, especially if plaintiff's work is associated in the public mind with the aspect of society commented on." Patry on Copyright § 10:91.

*Vape* also humorously pokes fun at various absurdities in *Grease*. For example, Sandy inexplicably does not return home at the end of the summer; everyone miraculously breaks into song and choreographed dance, and (at least in the movie) appears to be older than teenagers; and *Grease*'s abrupt plot transitions. Also, among other elements of *Vape*: the high school principal carries a gun and confiscates students' drugs for her own consumption; the character

8

Frenchie wants to study forensics so that she can create a podcasts about so-called cold cases and learns how to pierce ears from a YouTube tutorial; references are made to various apps for modern dating methods; and the big race is between two electric vehicles.

Vape does not merely use elements of Grease to get attention or to avoid the drudgery in working up something fresh. Campbell, 510 U.S. at 580. Like the plays in Lombardo and Adjmi, the Christmas-themed "The Elf Off The Shelf " book in CCA & B, and the movie poster in Leibovitz, Vape's content refers to and comments upon Grease.

It is not for the Court to "assume the role of art critic and seek to ascertain the intent behind or meaning of the works at issue." Andy Warhol Found., 992 F.3d at 114; Berlin, 329 F.2d at 545 ("While the social interest in encouraging the broad-gauged burlesques of Mad Magazine is admittedly not readily apparent, and our individual tastes may prefer a more subtle brand of humor, this can hard by dispositive here."); Patry on Fair Use § 3:94 ("Even vulgar caricature or a simplistic poking of fun may merit treatment as parody; it is not for judges to impose on the public their own views of what constitutes good humor"). The Court should determine whether the parodic character is reasonably perceivable, and it clearly is a parody.

## 2. Vape is Highly Transformative

Even if not a parody, Vape still is a fair use because it is highly transformative. There is no need to target the original work in order for Vape to be a fair use. Google, supra; Cariou, 714 F.3d at 706; Estate of James Oscar Smith v. Cash Money Records, Inc., 253 F. Supp. 3d 737, 748-52 (S.D.N.Y. 2017); Kienitz v. Sconnie Nation LLC, 965 F. Supp. 2d 1042, 1050-51 (W.D. Wis. 2013).

*Vape*'s use of source material from *Grease* is "in service of a 'fundamentally different and new' artistic purpose and character, such that the secondary work stands apart from the 'raw material' used to create it." *Andy Warhol Found.*, 992. F.3d at 114.

"The Supreme Court has stated that 'the goal of copyright … is generally furthered by the creation of transformative works.'" *TCA Television*, 839 F.3d at 179 (quoting *Campbell*, 510 U.S. at 579).  "Transformative use is neither a sufficient nor exclusive means to establish fair use, but such works lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright and the more transformative the new work, the greater the likelihood of a finding of fair use.  This is in keeping with the general calculus of copyright law: promoting the arts and sciences by rewarding ingenuity, without stifling creativity." *Adjmi*, 97 F. Supp. 3d at 530 (internal cit. and quot. om).

In deciding whether and to what extent the new work is transformative, "*Campbell* instructs that a court properly considers 'whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *TCA Television*, 839 F.3d 179 (quoting *Campbell*, 510 U.S. at 579; emphasis in original).  "[T]he critical inquiry is whether the new work uses the copyrighted material itself for a purpose, or imbues it with a character, different from that for which it was created." *Id.*; *see also Cariou*, 714 F.3d at 706.

Sketchworks asks that the court simply compare *Vape* and *Grease*.  *Vape* may "reasonably be perceived" as highly transformative of *Grease*.  *Cariou*, 714 F.3d at 707 (quoting *Campbell*, 510 U.S. at 582; and *Leibovitz*, 137 F.3d at 113-14).  Like the photographs at issue in *Cariou*, *Vape* manifests "an entirely different aesthetic from" *Grease*.  714 F.3d at 706.  *Vape*

adds something new to *Grease*, with a further purpose and different character that alters *Grease* with new expression, meaning, and message.  *Campbell*, 510 U.S. at 579.

*Vape* does not merely repackage *Grease* to entertain fans of *Grease*; it "is hardly a repeat."  *Adjmi*, 97 F. Supp. 3d at 531; *also Lombardo*, *supra*.  *Vape* "adds something new and important" and is therefore transformative.  *Google*, 141 S. Ct. at 1203.  *Vape* contains original dialogue and has a different purpose and character that alters *Grease* with new expression, meaning, and message.  *Vape* imbues *Grease* with a character different from that for which *Grease* was created and strives for new aesthetics with creative and communicative results distinct from *Grease*.

### 3.  Commercial Use

The Court should discount *Vape*'s commercial character because it is a parody of, and highly transformative of, *Grease*.  *Google*, 141 S. Ct. at 1204; *Campbell*, 510 U.S. at 579-81; *Cariou*, 714 F.3d at 708; *Blanch*, 467 F.3d at 254; *Lombardo*, *supra*.  "The commercial nature of a secondary use is of decreased importance when the use is sufficiently transformative such that the primary author should not reasonably expect to be compensated."  *Andy Warhol Found.*, 992 F.3d at 116.

### B.  <u>Second Factor: Nature of the Copyright Work</u>

The court should not give much weight to the second factor in light of *Vape*'s parodic nature.  *Lombardo*, *supra*.  The second factor is of limited usefulness in cases of parody and transformative use.  *Blanch*, 467 F.3d at 257; *Bill Graham*, 448 F.3d at 612 (defendant's use of plaintiff's images, concert posters for the musical group the Grateful Dead, in a biography of the Grateful Dead constituted fair use); *Adjmi*, 97 F. Supp. 3d at 53 (quoting *Campbell*, 510 U.S. at 586); *Abilene Music*, 320 F. Supp.2d at 89.

As stated by the Supreme Court, the second factor is rarely useful "in separating the fair use sheep from the infringing goats in a parody case, since parodies almost invariably copy publicly known, expressive works." *Campbell*, 510 U.S. at 586. The fact that *Grease* is so popular and successful is what makes *Vape* an effective parody. *Id.*

## C. **Third Factor: Amount and Substantiality of Use**

The third statutory factor asks whether "'the amount and substantiality of the portion used in relation to the copyrighted work as a whole' ... are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (quoting 17 U.S.C. § 107(3)). "The third fair use factor acts as a link between the first and fourth factors to screen out works that lack transformative character or threaten to serve as a market substitute for the original work." *Mattel*, 229 F. Supp. 2d at 323–24 (finding "slim to no likelihood" that defendant's sexualized Barbie dolls would serve as a market substitute for plaintiff's real Barbie dolls).

In assessing this factor, the court considers not only "the quantity of the materials used" but also "their quality and importance." *Campbell*, at 587. "Even a substantial taking…can constitute fair use if justified." *TCA Television*, 830 F.3d at 185.

"Because a parody must take recognizable material from the original in order to convey its message, it is more likely to copy the 'heart' of the original, and the court must take this into account in its consideration of the third factor, the amount and substantiality of the material used." *Abilene Music*, 320 F. Supp. 2d at 89 (citing *Campbell*, 510 U.S. at 588-89). A parodist need not take the bare minimum amount of material necessary to conjure up the original. *Campbell*, 510 U.S. at 588; *also SunTrust*, 268 F.3d at 1273 ("A use does not necessarily become infringing the moment it does more than simply conjure up another work."); *Adjmi*, 97 F. Supp.3d at 533 ("the Court of Appeals has consistently held that a parody under the fair use

doctrine is entitled to more extensive use of the original work than is ordinarily allowed under the substantial similarity test.").

To the extent that *Vape* mimics, draws upon, or copies *Grease*, it does so to make its point and such use of *Grease* is neither substantial nor excessive in relation to the parodic purpose. *Grease* is an object of the parody, and *Vape*'s humor and its comment necessarily springs from recognizable allusion to *Grease* through distorted imitation. Using some characteristic features of *Grease* cannot be avoided, as *Vape* must be able to refer to recognizable elements of *Grease* and conjure up at least enough of *Grease* to make the objects of its critical wit recognizable to the audience. Any of *Vape*'s use of *Grease*'s characters, music, setting, plot, and style is in service of the parody and thus tethered to a valid, and transformative, purpose.

1. Alleged Note-For-Note Copying Of Songs

Even if on this Rule 12 motion the Court accepts Defendants' allegation that the songs in *Vape* are a note-for-note copy of the music (but not lyrics) in *Grease*, "copying a larger amount of material can fall within the scope of fair use where the material copied captures little of the material's creative expression or is <u>central to a copier's valid purpose</u>." *Google*, 141 S. Ct. at 1205 (emphasis added). *Grease*'s music is one of its beloved elements, and thus use of the music is central to the valid purpose of parodying *Grease*.

The Second Circuit has expressly "rejected the proposition that this factor necessarily favors the copyright holder even where the secondary user has copied the primary work in *toto* in service of a legitimate secondary purpose." *Andy Warhol Found.*, 992 F.3d at 118. For example, in the *Bill Graham* case, exact copies of posters of the band The Grateful Dead were copied in the allegedly infringing work, but the use was found to be fair. There simply is no *per se* rule that copying the entirety of a work removes it from fair use.

13

The Court also should consider what *Vape* did not copy – the lyrics – and how the musical compositions are used within in the context of the greater whole of *Vape*. *Andy Warhol Found.*, 992 F.3d at 118. "[C]ontext is everything." *Campbell*, 510 U.S. at 589. *Vape* uses the music, but also adds so much more and it is inconceivable that *Vape*'s usage of the songs (even if "the heart" of *Grease*) serves as a market substitute for any of Defendants' works. *Campbell*, 510 U.S. at 588-89. *Vape*'s songs "I Prolly Just Need to Poo," "Prius Lightning Pt. 1," "Online School Dropout," and "We're Totes Amazeballs," are not market substitutes for any of the songs in *Grease*.

The "substantiality" factor weighs in favor of fair use because the amount of alleged copying was tethered to a valid, and transformative, purpose. *Google*, 141 S. Ct. at 1205. The purpose was parody, and the parody is substantial. Use of the same music is central to that valid purpose. *Id.*; *Elsmere Music*, 482 F. Supp. At 747 (parody of jingle).

2.  Usage Of The Same Names And Locations & Allegedly Similar Plot

*Vape*'s usage of the same character names and locations, as well as the allegedly similar plot and arc, also does not remove *Vape* from the realm of fair use. In *Lombardo*, the same characters (the Grinch and Cindy-Lou Who), and location (Whoville) were used in the parody as in Dr. Seuss's "How The Grinch Stole Christmas!" The Second Circuit, in that case, found "While the Play does use the Grinch's characters, setting, plot, and style, it is in service of the parody. The Play does not copy verbatim or quote from the original book, and while it does recount the plot, it does so to invoke the original." 729 Fed. App'x 131. The same character names and/or settings were also used in *SunTrust* ("Gone with the Wind" parody), and *CCA &B* ("The Elf Off The Shelf" case).

14

Assuming, *arguendo*, that the characters in *Grease* are entitled to copyright protection[2] and that Defendants could bring an infringement action absent a copyright registration for the characters, *Vape* did not impermissibly copy those characters. *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 239-45 (2nd Cir. 1983) (superhero character was sufficiently dissimilar to Superman); *Conan Properties, Inc. v. Mattel, Inc.*, 712 F. Supp. 353, 361 (S.D.N.Y. 1989) ("This Court has read the Conan comic books and examined the He-Man doll. The protected elements of Conan and He-Man are not substantially similar, and no reasonable trier of fact could conclude otherwise."); *Kouf v. Walt Disney Pictures & TV*, 16 F.3d 1042, 1046 (9th Cir. 1994); *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1177-80 (C.D. Cal. 2016) (dismissing, on the pleadings, claims for copyright infringement of characters). *Vape* uses the same names but not the characteristics that make them who they are in *Grease*: the personalities of the characters are different in the two works.

For example, in *Vape*, the coach character attempts to sexually molest the Danny character, who wants to make himself "a better man" and impress Sandy (or at least he wants "to bang [Sandy] once before graduation"). The coach says, "As we all know, playing sports is literally the only way a person can improve himself" and that "Sex with beautiful women is the primary reason young men should participate in the athletics." Likewise, in *Vape* Doody "traveled abroad to find [him]self" and also started a YouTube channel; the principal has a drug problem. They may have the same names, but these are not the same characters as in *Grease*.

_____

[2] *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015) (describing test for determining whether a character in a comic book, television program, or motion picture is entitled to copyright protection).

A parody also may use the same or similar plot arc, style and themes and still constitute fair use. *Adjmi*; 97 F. Supp. 3d at 530-31; *CCA & B*, *supra*; *Lombardo*, *supra*; *Brownmark*, *supra*.  In the context of a parody, mimicry is permitted to allow the parody to make its point.  *Campbell*, 510 U.S. at 580-81.

### D.  <u>Fourth Factor: Effect on Potential Market for Copyrighted Work(s)</u>

There is virtually no possibility that consumers will go see *Vape* in lieu of watching an authorized version of *Grease*.  *E.g., Lombardo*, *supra*.  Additionally, "a potential loss of revenue is not the whole story."  *Google*, 141 S. Ct. at 1206.  As the Supreme Court pointed out in *Campbell*, a "lethal parody, like a scathing theatre review," may "kil[l] demand for the original." 510 U.S. at 591-92.  Yet this kind of harm, even if directly translated into foregone dollars, is not "cognizable under the Copyright Act."  *Id.*; *Google*, 141 S. Ct. at 1206.  Defendants cannot control the market for parodies.  *Vape* is a critical parody and "the law recognizes no derivative market for critical works."  *Campbell*, 510 U.S. at 592.

The final statutory factor considers "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), focusing on whether the secondary use usurps demand for the protected work by serving as a market substitute.  *Campbell*, 510 U.S. at 592; *TCA Television*, 839 F.3d at 186. The more transformative the secondary use, the less likelihood that the secondary use substitutes for the original, even though the fair use, being transformative, might well harm, or even destroy, the market for the original.  *Cariou*, 714 F.3d at 709.

*Vape* does not "usurp" the market for *Grease* or supersede *Grease*.  *Cariou*, 714 F.3d at 708-09; *Elsmere Music*, *supra* (Saturday Night Live parody song did not interfere with the marketability of the plaintiff's advertising jingle); *Lombardo*, *supra*.  The court need only

compare the two works to determine that *Vape* is not a substitute for *Grease*.  *Lombardo*, *supra*; *Adjmi*, 97 F. Supp. 3d at 535.

The two works serve different market functions. *E.g.*, *CCA & B*, 819 F. Supp. 2d at 1323 ("it is highly unlikely that consumers will choose an inappropriate-for-children parody in lieu of the wholesome [original].") (Emphasis in original); *Lombardo*, *supra*.  *Vape* is a transformative parody of *Grease*.

 "[A] court properly considers the challenged use's impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets." *TCA Television*, 839 F.3d at 186 (quot. om.).  Defendants cannot prevent others from entering fair use markets merely be developing or licensing a market for other uses of *Grease* beyond the original musical play (e.g., the popular film, amateur theater).  *Bill Graham*, 448 F.3d at 614-15.

Defendants may have on numerous occasions, and for substantial profit, licensed derivative works of *Grease*.  Counterclaims, ¶ 18.  However, Defendants did not plead facts that *Vape* usurps a market that Defendants have exploited or might in the future.  Any conclusory allegations of market harm are insufficient to push the fourth fair use factor in its favor. *Generally*, *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).

The Court also "must take into account the public benefits the copying will likely produce. Are those benefits, for example, related to copyright's concern for the creative production of new expression? Are they comparatively important, or unimportant, when compared with dollar amounts likely lost (taking into account as well the nature of the source of the loss)?" *Google*, 141 S. Ct. at 1206.  Here, the public benefit relates to copyright law's concern for the creative production of new expression.  Defendants' copyright interests in

*Grease* should not stand in the way of others exercising their own creative powers or stifle the very creativity which the copyright law is designed to foster.

Defendants cannot control the creation of parodies.[3]  But even if the Court concludes that the fourth factor favors Defendants, *Vape* is still fair use because the first factor favors Sketchworks and it is "the heart of the fair use inquiry".  *Cariou*, 714. F.3d at 705.

## IV.  DEFENDANTS' TRADEMARK INFRINGEMENT CLAIM IS MERITLESS

Trademark law does not provide Defendants with a backdoor around copyright fair use. *Mattel*, 353 F.3d at 806-08; *also*, *Lombardo*, *supra*; *Warner Bros.*, 720 F.2d at 246 ("the absence of substantial similarity [for the purposes of a copyright action] leaves little basis for asserting a likelihood of confusion"); *Durham Industries v. Tomy Corp.*, 630 F.2d 905, 918 (2nd Cir. 1980) ("In regard to the three Disney characters, Tomy cannot achieve by an unfair competition claim what it failed to achieve under its copyright claim"); *Fioranelli v. CBS Broadcasting Inc.*, 232 F.Supp.3d 531 (S.D.N.Y. 2017).

*Vape* is an expressive work and therefore the Court should apply the standard set forth in the *Rogers* and *Cliffs Notes* cases.  Both cases support the finding that *Vape*'s usage of the word GREASE in its advertising and in the title credits does not infringe Defendants' trademark because the work is a parody.  *See also*, *Twentieth Century Fox TV v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017).

---

[3] On information and belief, *Grease* has been the subject of other parodies (e.g., Mad Magazine, No. 205, March 1979, where during Sandy's transformation she says, "I love him, and I'm going to change for him!  That's the moral of this movie!  In order to get the guy you love…You have to be a SLUT!! What a wonderful message for the youth of America!!").  *Vape* is in the same tradition of fair use.

Here, *Vape*'s use of the word "Grease" is artistically relevant (*Vape* is a parody of *Grease*), and its use of the mark does not explicitly mislead as to the source or content of the work.  Further, the public interest in free expression and parody similarly outweighs the (non-existent) risk of consumer confusion between the two works.

"No one likes to be the butt of a joke, not even a trademark.  But the requirement of trademark law is that a likely confusion of source, sponsorship or affiliation must be proven to sustain a change of infringement.  This is not the same thing as a 'right' not to be mocked or made fun of."  6 McCarthy on Trademarks and Unfair Competition § 31:153 (5th ed.). The following cases further support the district court's dismissal of the trademark counterclaim because *Vape*'s use of the word GREASE is for expressive purposes of comedy and parody rather than for identification of origin: *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410 (S.D.N.Y. 2002); *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 335 (S.D.N.Y. 2000); *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 275 (S.D.N.Y. 1992); *Tetley, Inc. v. Topps Chewing Gum, Inc.*, 556 F. Supp. 785 (E.D.N.Y. 1983).

Vape is "obviously a joke," but one that Defendants perhaps "cannot take." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 430 (S.D.N.Y. 2016), *aff'd* 674 Fed. Appx. 16 (2nd Cir. 2016). "In some cases [like here]… it is better to accept the implied compliment in a parody and to smile or laugh than it is to sue." *Id.*, at 445 (internal quot. om.).  It is unlikely that an ordinarily prudent purchaser would think that *Vape* is actually a work written by Mr. Casey and/or Mr. Jacobs or otherwise authorized by Defendants, as opposed to a parody of *Grease*.  *Cliffs Notes*, 886 F.2d at 495

Taken as a whole, *Vape* "pokes fun" at *Grease* and there are sufficient reasons to conclude that consumers will realize it is a parody.  *Cliffs Notes*, 886 F.2d at 495-96.  To that

end, *Vape*'s usage of the term GREASE expressly indicates that *Vape* is a parody and that it is being produced by a comedy group. Below are screen-shots showing the advertising, and a screen-shot from the performance of *Vape* on YouTube (Answer to Counterclaims, ¶¶ 30; Ex. 2, at 2 min., 10 sec. mark of vido):







To the extent the court undertakes the usual "Polaroid" likelihood of confusion test,[4] the materials identifying *Vape* as a parody of and/or based upon *Grease* severely diminishes any likelihood of confusion. *Generally*, *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993); *Rosenfeld v. W.B. Saunders, a Div. of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236, 243 (S.D.N.Y.), *aff'd sub nom. Rosenfeld v. Saunders*, 923 F.2d 845 (2d Cir. 1990). Additionally, the strength and distinctiveness of the *Grease* brand actually favors Sketchworks because it makes it "easier for the audience to realize that the use is a parody and a joke." *My Other Bag*, 156 F. Supp. 3d at 495. The second factor also favors *Sketchworks* because there are obvious differences between the parties' uses of the marks, which in the context and overall setting convey to the ordinary viewer that *Vape* is a parody and therefore unlikely to cause confusion as to source, sponsorship or affiliation. *Id.*, at 441-42. As to the other factors, like in *My Other Bag* the works are in no meaningful sense competitive, Defendants have not alleged any actual evidence of consumer confusion (nor could they reasonably given the "parody" disclaimer and other indicators), and because *Vape* is (on its face) a parody designed to amuse rather than confuse. *Id.*, at 442-43.

## V.    THE RIGHT OF PRIVACY CLAIM IS ALSO MERITLESS

The use of Mr. Jacobs' name in *Vape* or related marketing/advertising materials, which accurately identify him as an author of *Grease*, does not violate the New York right of privacy statute. N.Y. Civil Rights Law §§ 50-51. Works of art are excluded from the statute, and the brief usage of Mr. Jacobs' name in the context of the greater work is insufficient to state a claim.

---

[4] *Polaroid v. Polared Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).

Mr. Jacobs fundamentally misunderstands the New York right of privacy statute. Counterclaim, ¶¶ 46-47. The law does not absolutely prohibit the unauthorized use of another person's name or likeness because doing so would conflict with the First Amendment. *Generally*, 44 N.Y. Jur. 2d Defamation and Privacy § 303.

The statute, as narrowly construed by the courts, concerns unauthorized usage for advertising purposes or for purposes of trade <u>only</u>. *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 727 N.E.2d 549, 552 (N.Y. 2000) ("the statute is to be narrowly construed and strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person"); *Finger v. Omni Publications Int'l, Ltd.*, 566 N.E.2d 141, 143 (N.Y. 1990).

However, usage of another person's name in a work of art – like a play – does not constitute a violation of the statute. *Lohan*, 924 F. Supp. 2d at 454 ("There is a well-recognized exception for works of art and advertising that is undertaken in connection with a use protected by the First Amendment.  The use of an individual's name—even without his consent—is not prohibited by the New York Civil Rights Law if that use is part of a work of art"); *Altbach v. Kulon*, 754 N.Y.S.2d 709, 712 (3rd Dep't 2003) (citing *Hoepker v. Kruger*, 200 F. Supp. 2d 340 (S.D.N.Y. 2002)); *also* 44 N.Y. Jur. 2d Defamation and Privacy § 329.

"Publications which are patently fictional, which cannot be construed as describing real happenings, and which clearly were never intended to deceive or confuse the public may well have literary merit and serve the public interest.  Caricature and satire do not violate the strictures of the Civil Rights Law." *Davis v. High Soc. Mag., Inc.*, 457 N.Y.S.2d 308, 315 (2d Dep't 1982).

And inasmuch as Mr. Jacobs' name is only briefly used in the title-card, such "isolated references are of that fleeting and incidental nature which the Civil Rights Law does not find

offensive." *Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*, 256 N.Y.S.2d 301, 304 (1st Dep't 1965), *aff'd* 207 N.E.2d 508 (N.Y. 1965).  *See also*, *Lohan*, 924 F. Supp. 2d at 455 (collecting cases); *Damron v. Doubleday, Doran & Co.*, 231 N.Y.S. 444, 446 (Sup. Ct., NY Co. 1928) ("The single appearance of plaintiff's name in this book is clearly not a use prohibited by the statute.").

Lastly, the limited usage of Mr. Jacob's name during a performance in Georgia has a real relationship to the work (he is an author of *Grease*, the subject of the parody).  *Messenger*, 94 N.Y.2d at 442-44.

## VI.    <u>CONCLUSION</u>

*Vape* constitutes copyright fair use, and Defendants cannot use trademark law or the right of privacy to trump Sketchworks' First Amendment right of expression.  The Court should dismiss the counterclaims and grant Sketchworks the declaratory relief it seeks in its complaint. As the prevailing party, Sketchworks should be awarded its attorney's fees under both the Copyright Act and Lanham Act, and Sketchworks respectfully requests that the court set a briefing schedule for such a motion.


Dated: June 15, 2021

<div style="margin-left:35%">

J. GREENBERGER, PLLC
*Counsel for Plaintiff*
 /s/ Jordan Greenberger
Jordan Greenberger, Esq. (JG-0316)
*Mailing*: 41 Watchung Plaza, #334, Montclair, NJ 07042
NY: 500 7th Avenue, 8th Floor, New York, NY 10018
(718) 502-9555
jordan@jgreenbergerlaw.com

</div>