UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

SKETCHWORKS INDUSTRIAL STRENGTH
COMEDY, INC.,

                Plaintiff,


    -v-                                      No. 19-CV-7470-LTS-VF

JAMES H. JACOBS, et al.,

                Defendants.

--------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

        Sketchworks Industrial Strength Comedy, Inc. ("Plaintiff" or "Sketchworks"),
brings this action against James H. Jacobs, as Trustee of the James H. Jacobs Trust, and Richard
Casey, Peggy Ann Adams, Martha Bombardi, Leonard Casey, and Linda Casey, as Trustees of
the Warren Casey Trust Under Will (together "Defendants"), seeking a declaratory judgment,
pursuant to 28 U.S.C. section 2201, that its theater production, titled Vape, constitutes fair use of
the musical Grease under the Copyright Act, 17 U.S.C. section 107, and therefore does not
infringe Defendants' copyright in Grease.  (Docket entry no. 56, Second Amended Complaint,
("SAC").)  Plaintiff asserts that Vape is a parody of Grease and seeks a judicial determination
that Vape does not infringe on Defendants' copyright interest in Grease or any derivatives
thereof.  (Id. ¶¶ 69, 74.)  Before the Court are Plaintiff's and Defendants' cross-motions for
judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  (Docket entry
nos. 63, 69.)  The Court has jurisdiction of this case pursuant to 28 U.S.C. sections 1331,
1338(a), and 1367.

The Court has considered carefully the parties' submissions and arguments and, for the following reasons, grants Plaintiff's motion for judgment on the pleadings in its entirety, and denies Defendants' cross-motion for judgment on the pleadings in its entirety.

BACKGROUND

The following recitation of facts is drawn from the Second Amended Complaint, Defendants' answer to the Second Amended Complaint setting forth Defendants' counterclaims (see docket entry no. 57 ("Def. Answer")), and Plaintiff's answer to Defendants' counterclaims. (See docket entry no. 58 ("Pl. Answer").)  Because the parties have filed cross-motions for judgment on the pleadings, the Court will "employ the same standard applicable to Rule 12(b)(6) motions to dismiss" and "[a]ccept[] the non-moving party's allegations as true" for the purposes of this decision, Vivar v. City of New York, No. 18-CV-5987, 2020 WL 1505654, at *5 (S.D.N.Y. Mar. 30, 2020) (quotation omitted), with the exception that the Court is "not limited to looking at the Complaint" and "need not ignore the well-pleaded allegations of the answer[s] that are not controverted in the [respective] pleading[s]."  Harper v. City of New York, No. 11-CV-4333-CM, 2013 WL 432599, at *1 (S.D.N.Y. Jan. 31, 2013) (explaining Rule 12(c) standard); see also Koninklijke Philips Elecs. N.V., v. The ADS Grp., 694 F. Supp. 2d 246, 250 n.7 (S.D.N.Y. 2010) (explaining that a "Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole as opposed to simply the complaint and its attachments") (citing Wright & Miller, Federal Practice & Procedure, §§ 1367, 1368 (2d. ed 1995)).

Plaintiff operates a sketch comedy company incorporated in Georgia, and owns a copyright in Vape, an alleged parody of the popular theatrical work, Grease, of which Warren

Casey[1] and Defendant James H. Jacobs are co-authors.  (SAC ¶¶ 2, 5, 22.)  <u>Grease</u> follows a group of teenagers in the 1950s "as they navigate adolescence, peer pressure, personal values, sexual exploration, love and friendship."  (<u>Id.</u> ¶ 8.)  <u>Grease</u> has been produced in multiple versions, including the original musical play and a popular 1978 film version featuring John Travolta and Olivia Newton-John, on which <u>Vape</u> is allegedly based.  (<u>Id.</u> ¶¶ 8-9.)  The film's story line begins on summer break, and showcases a summer romance between a local teenager, Danny Zuko, and Sandy Olsson, a teenager visiting from abroad.  (<u>Id.</u> ¶ 10.)  The school year then begins and, rather than returning home after the summer break, Sandy enrolls at Rydell High School, which Danny attends along with other supporting characters including Rizzo, Frenchy, Marty, and Jan, who comprise the "Pink Ladies" friend group, and Danny's friends, Kenickie, Doody, Sonny, and Putzie, who comprise Danny's greaser gang known as the "T-Birds."  (<u>Id.</u> ¶¶ 11-12.)  The film follows the challenges these characters face in their relationships and personal lives, as well as the ups-and-downs of Sandy and Danny's romantic relationship.  (<u>Id.</u> ¶¶ 13-21.)  The film culminates in Danny and Sandy's reunion, where Sandy, "who is normally conservatively dressed . . . shocks Danny when she arrives [on the last day of school] provocatively dressed like a greaser in black leather with teased hair and smoking a cigarette."  (<u>Id.</u> ¶¶ 19-20.)  They proceed to ride off together "in a car that flies off into the sky."  (<u>Id.</u> ¶ 21.)

    <u>Vape</u>, a stage musical, follows the same characters along roughly the same story-arc as <u>Grease</u>, depicting Danny and Sandy's romance over their summer vacation, and the ups-

---

[1]  Warren Casey is deceased.  (Docket entry no. 68 ("Def. Mem.") at 18.)  Defendants Richard Casey, Peggy Ann Adams, Martha Bombardi, Leonard Casey, and Linda Casey are the special trustees responsible for administering the Casey Trust's various copyrights and trademarks associated with the production of <u>Grease</u>.  (SAC ¶ 4.)

and-downs their relationship takes over the course of a school year at Rydell High School.  (SAC ¶¶ 23-24, 31-55.)  Vape also depicts the relationships and challenges experienced by the characters Rizzo, Frenchy, Marty, and Jan, who name their girl group the "#PinkSquad," and Kenickie, Doody, Sonny, and Putzy, who, together with Danny, refer to their group as "the-T-Bros."  (Id. ¶¶ 24, 26, 27, 33.)  In addition to using the setting and character names from Grease, Vape features portions of nine songs from Grease and/or its licensed versions, including the songs' instrumental tracks and chord progressions.  (Def. Answer at 10-11, ¶¶ 12-13.)

Plaintiff asserts that Vape is a parody of Grease, explaining that it "pokes fun at various absurdities in Grease" (SAC ¶¶ 52, 55), and "uses millennial slang, popular culture, a modern lens, and exaggeration to comment upon the plot, structure, issues and themes of Grease and to criticize its misogynistic and sexist elements."  (SAC ¶ 53.)  In so doing, Vape, which was written and directed by women, "reexamines Grease from a female perspective in the #MeToo era," and "exposes how the 'humor' and rape-cultured elements of Grease have not aged well" by, for example, "directly criticiz[ing] Grease's 'happy ending,' where a woman completely changes who she is in order to please a man."  (Id. ¶ 53.)  Vape also "recognizes that modern youth still navigate complex issues relating to sex, drugs, and peer pressure – just in different forms from their 1950s counterparts."  (Id. ¶ 54.)

Defendants dispute Plaintiff's characterization of Vape as a parody and assert that Vape infringes their copyright in Grease by utilizing the music, plot, characters, settings, and other elements from Grease.  (Def. Answer at 13, ¶ 21.)  After learning that Vape was scheduled to be performed in New York City in August 2019, Defendants sent Plaintiff, and the theater where Vape was scheduled to be performed, cease and desist letters on July 29, 2019.  (SAC ¶¶

57-58.)  Shortly after, the theater cancelled the scheduled performances.  (Id. ¶ 60.)  Despite these cancellations, Sketchworks hopes to perform Vape in the future.  (Id. ¶ 64.)

 Defendants also assert that Plaintiff misappropriated Defendants' trademark in the registered mark "Grease," and the name of Defendant Jim Jacobs, by using them without permission in order "to commercially benefit" from their attached "popularity and goodwill." (Def. Answer at 14, ¶¶ 30-31.)  At the beginning of the performance of Vape, Plaintiff displays title and opening credits slides.  (Pl. Answer ¶ 30.)  One of the slides states, "Based on GREASE by Jim Jacobs and Warren Casey."  (Id.)  Plaintiff also describes Vape as "A live musical parody of Grease!" in its advertising materials.  (Id.)  Defendants allege that these representations are "likely to" lead consumers to believe that "Vape has been authored, approved, licensed, endorsed or in some way affiliated with the Defendants."  (Def. Answer at 15, ¶ 34.)  Defendants pursue counterclaims for trademark infringement under the Lanham Act, 15 U.S.C. § 1125 et seq., and violation of the right of privacy under sections 50 and 51 of the New York Civil Rights Law for these alleged infringements.

 A copy of the 1978 film of Grease and a video recording of a performance of Vape are incorporated by reference into the pleadings, and copies of the works were provided to the Court.  (See Exhibits 2 and 3 to docket entry no. 64, Declaration of Jordan Greenberger ("Greenberger Decl.").)

<u>DISCUSSION</u>

 Under Fed. R. Civ. P. 12(c), "a party is entitled to judgment on the pleadings only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Zurich Ins. Co. v. Crowley Latin Am. Servs., LLC, No. 16-CV-

1861-JPO, 2016 WL 7377047, at *2 (S.D.N.Y. Dec. 20, 2016) (internal quotation and modifications omitted).  In deciding a motion brought under Rule 12(c), the Court employs "the same plausibility standard that applies on a Rule 12(b)(6) motion" and assumes the factual allegations of "all pleadings—including defendant's counterclaims" to be true.  Lombardo v. Dr. Seuss Enters., L.P., 279 F. Supp. 3d 497, 505 (S.D.N.Y. 2017), aff'd 729 F. App'x 131 (2d Cir. 2018).  As part of its evaluation, the Court "may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit." Adjmi v. DLT Ent. Ltd., 97 F. Supp. 3d 512, 526 (S.D.N.Y. 2015).  Here, Plaintiff relied upon its work, Vape, and the film, Grease, in bringing this action for declaratory relief, and the Court has reviewed and considered these works in reaching this decision.

Copyright Infringement

Plaintiff seeks a declaration that its play, Vape, does not infringe Defendants' copyright in the work, Grease, because Vape is a parody of Grease and constitutes fair use of the copyrightable elements of Grease.  "Numerous courts in this district have resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue." Lombardo, 279 F. Supp. 3d at 504 (collecting cases); see also Adjmi, 97 F. Supp. 3d at 527 ("Courts in this Circuit have resolved motions to dismiss on fair use grounds in this way: comparing the original work to an alleged parody, in light of applicable law."). Plaintiff and Defendants agree that the Court has authority to decide this issue at this procedural juncture, and they concur that the 1978 film and the recording of the Vape performance are the appropriate works for comparison.

The Copyright Act of 1976 furthers Congress' constitutional responsibility to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors . . .

the exclusive Right to their respective Writings. . . ."  U.S. Const. art. I, § 8, cl. 8.  The Copyright

Act not only protects "original creative work[s]," but also "derivative works," defined as works

"based upon one or more preexisting works, such as a[n] . . . art reproduction, abridgement,

condensation, or any other form in which a work may be recast, transformed, or adapted."  Andy

Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 36 (2d Cir. 2021) (quoting 17

U.S.C § 101), cert. granted, 142 S. Ct. 1412 (Mar. 28, 2022) (No. 21-869).  However, "a

copyright holder cannot prevent another person from making a 'fair use' of [its] copyrighted

material."  Google LLC v. Oracle Am., Inc., 141 S. Ct. 1183, 1196 (2021) (quoting 17 U.S.C. §

107).  The fair use doctrine "seeks to strike a balance between an artist's intellectual property

rights to the fruits of her own creative labor . . . , and 'the ability of [other] authors, artists, and

the rest of us to express them – or ourselves by reference to the works of others.'"  Goldsmith, 11

F.4th at 36 (quoting Blanch v. Koons, 467 F.3d 244, 250 (2d Cir. 2006)).  Section 107 of the

Copyright Act "provides a non-exclusive list of four factors that courts are to consider when

evaluating whether the use of a copyrighted work is 'fair.'"  Id. at 36-37.  The factors are:

> (1) the purpose and character of the use, including whether such use is of a commercial
> nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work
> as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  (Westlaw P.L. through 117-116).  The Court will address each factor in turn.

The Purpose and Character of Vape

The central inquiry of the first factor is "whether and to what extent the new work is transformative," or the extent to which the new work "merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994) (internal quotations and citations omitted).

Section 107 of the 1976 Copyright Act identifies "[p]aradigmatic examples of transformative uses," including "criticism" and "comment." Goldsmith, 11 F.4th at 37.  The Supreme Court has recognized that "parody has an obvious claim to transformative value" because, "[l]ike less ostensibly humorous forms of criticism, it can provide social benefit, by shedding light on an earlier work, and, in the process, creating a new one." Campbell, 510 U.S. at 579; see also Goldsmith, 11 F.4th at 37 ("[P]arody, which needs to mimic an original to make its point, is routinely held transformative." (internal quotation and citation omitted)).  "The 'threshold question when fair use is raised in defense of parody is whether a parodic character may reasonably be perceived.'" Lombardo, 279 F. Supp. 3d at 505 (quoting Campbell, 510 U.S. at 582).

Defendants argue that Vape does not comment on the substance of Grease, but rather comments on society writ large, and therefore is not a parody entitled to protection under the fair use doctrine.  (Def. Mem. at 4-5.)   Specifically, Defendants allege that the authors of Vape used elements from Grease to communicate the authors' "female perspective on misogynistic, sexist and rape-culture elements" of "modern society" without having to deal with the "drudgery of coming up with something new."  (Id. at 3-4.)  Defendants assert that there is

"no justification or explanation" for Plaintiff's use of <u>Grease</u>, in particular, to communicate their critique of society writ large.  (<u>Id.</u> at 5.)

After performing a careful review of the pleadings and the works at issue,[2] the Court finds Defendants' characterization of <u>Vape</u> to be overly simplistic and incomplete for multiple reasons.

First, Defendants overlook the manner in which <u>Vape</u> mocks various specific elements of <u>Grease</u>, including absurdities in the plot line.  For example, early in <u>Vape</u>, when the play transitions from Danny and Sandy's summer vacation at the beach to the beginning of the school year, Frenchy explains to Sandy that Rydell High School is "the one school where everybody randomly busts into choreographed song and dance, and we all look at least 30," poking fun at the more mature appearances of the actors in <u>Grease</u> and their characters' propensity to break out into coordinated song and dance routines.  (SAC ¶ 24; <u>see also</u> <u>id.</u> ¶ 43 (explaining how Sandy in <u>Vape</u> declares how nervous she is that she does not know the choreographed dances "that literally everyone at this school knows").)  In the same scene, <u>Vape</u> mocks how <u>Grease</u> provides no explanation for how Sandy, an out-of-towner who meets Danny while travelling for the summer, ends up staying in town and attending his high school.  (<u>Id.</u> ¶¶ 24-25.)  In <u>Vape</u>, the #PinkSquad asks Sandy the name of the boy she fell in love with over the summer, noting, "You know[,] in the off chance that he'll go to this supremely large high school" (<u>id.</u> ¶ 25), and Frenchy notes that Sandy "just moved here and no one knows why!"  (<u>Id.</u>

---

[2]     <u>See</u> <u>Brown v. Netflix, Inc.</u>, 855 F. App'x 61, 63 (2d Cir. 2021) ("When, as here, the copyrighted and secondary works are incorporated by reference into the pleadings, 'the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'") (quotation omitted); <u>see also</u> <u>Adjmi</u>, 97 F. Supp. 3d at 516 (noting that, where the pleadings "present different conceptions" of the two works at issue, the "Court relies on the underlying source material" to present its account of the works).

¶ 24.)  Another prime example of the critical approach <u>Vape</u> takes to <u>Grease</u> is the scene in which Sandy allows Frenchy to pierce her ears at the girls' sleepover.  Although, in <u>Grease</u>, Sandy supposedly cannot hear the girls singing and mocking her from behind the bathroom door, in <u>Vape</u>, Sandy draws attention to their tactlessness, noting, "There was literally just hollow door in between us.  I could hear every word you were singing."  (<u>Id.</u> ¶ 35.)

Second, <u>Vape</u> changes certain elements of <u>Grease</u>, including the script and lyrics to songs, in order to emphasize the misogynistic features of the original work.  For example, when Danny apologizes to Sandy in the movie, <u>Grease</u>, after he treats her poorly during their reunion at Rydell High School, she forgives him and they continue their relationship by going out to a restaurant with their friends and to the school dance together.  (SAC ¶¶ 13-16; Greenberger Decl., Ex. 3.)  <u>Vape</u> capitalizes on Sandy's decision to forgive a man who treated her badly.  In <u>Vape</u>, she also accepts Danny's apology, but adds, "Lucky for you, Society has taught me to give an unlimited amount of chances to undeserving men."  (SAC ¶ 39.)  Perhaps most crucially, <u>Vape</u> criticizes Grease's "happy ending," in which Sandy decides to change herself and become a greaser in order to be in a relationship with Danny.  <u>Vape</u> incorporates sarcastic, new dialogue into the script to comment on Sandy's decision.  Sandy tells Frenchy, "I want Danny back.  Frenchy, I'm going to change everything about myself for him," and Frenchy replies sarcastically, "That's so great to hear.  You definitely won't regret this later . . . [s]aid no one ever . . . . Let's go to my house for this totally unnecessary makeover."  (<u>Id.</u> ¶ 46.)  After her makeover, Sandy arrives at the last-day-of-school celebration in her greaser outfit and explains that she has experienced a "sexual awakening while also abandoning [her] identity and values." (<u>Id.</u> ¶ 48.)  There are numerous other instances in <u>Vape</u> in which alterations of <u>Grease</u> emphasize and comment critically on the misogynistic tendencies of the original work.  (<u>See, e.g.</u>, <u>id.</u> ¶ 41

(When Danny decides to try sports to impress Sandy, as he does in <u>Grease</u>, the coach character in <u>Vape</u> departs from <u>Grease</u>'s script and notes, "Sex with beautiful women is the primary reason young men should participate in the athletics."); <u>id.</u> ¶ 39 (altering Danny's apology to Sandy to say: "I'm not allowed to look vulnerable or like I care about women in front of my boys"); <u>id.</u> ¶ 38 (changing lyrics to song, "Greased Lightnin'," to be "Why, this car is gonna be misogynistic!"); Def. Answer at 11, ¶ 12 and Greenberger Exs. 2-3 (changing lyrics to song, "Summer Nights" to "She was legal, but she looked preteen.").)

Third, to the extent Defendants argue that Plaintiff cannot establish fair use because it fails to provide a "justification" or "explanation" of how each departure taken from <u>Grease</u> relates to <u>Vape</u>'s purpose of commenting on the underlying work, (<u>see</u> Def. Mem. at 5), Defendants take too narrow a view of the law.  <u>See</u> <u>Lombardo</u>, 279 F. Supp. 3d at 507 ("[T]he copied work must be, at least in part, an object of the parody, otherwise there would be no need to conjure up the original.") (quotation omitted); <u>Mattel, Inc. v. Pitt</u>, 229 F. Supp. 2d 315, 322 (S.D.N.Y. 2002) (explaining that parody "must[,] at least in part[,] comment on the parodied work in particular, and not solely consist of general social criticism."); <u>Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.</u>, 886 F.2d 490, 495-96 (2d Cir. 1989) (describing a work as a parody "if, taken as a whole, it pokes fun at its subject").  Plaintiff admits that <u>Vape</u> "recognizes that modern youth still navigate complex issues relating to sex, drugs, and peer pressure . . . in different forms from their 1950s counterparts" and "explores whether modern society has progressed at all by pointing to current systemic issues that still exist."  (SAC ¶ 54.) However, as shown above, this is not a case in which the authors of <u>Vape</u> have taken elements from <u>Grease</u> "for the sake of convenience, and then changed the lyrics [and script] to satirize a subject having nothing to do with the original [work]."  <u>Abilene Music, Inc. v. Sony Music Ent.</u>,

Inc., 320 F. Supp. 2d 84, 91 (S.D.N.Y. 2003).  Nor is it merely a derivative update of Grease.  To the contrary, Vape relies on allusion to Grease to convey its central message about Grease's misogynistic story line.  See id. at 91-92 (finding a new song that included a portion of the song Wonderful World to be a parody of Wonderful World, noting that, although the "message of [the new song] goes beyond simply parodying Wonderful World, that parody is an integral part of the song's take on the world because it highlights the contrast between the two worldviews, and expresses the rapper's belief in the realism of his own perspective"); Adjmi, 97 F. Supp. 3d at 530 (finding the plaintiff's play to be a transformative use of the television show Three's Company because the work "conjures up Three's Company by way of familiar character elements, settings, and plot themes, and uses them to turn Three's Company's sunny 1970s Santa Monica into an upside-down, dark version of itself.  [Defendant] may not like that transformation, but it is a transformation nonetheless.").  By juxtaposing familiar elements from Grease, such as the main characters and the plot arc, with alterations to the script and song lyrics, Plaintiff draws attention to the treatment and plight of the female characters in Grease and comments on how misogynistic tendencies have both evolved since Grease was developed and remain the same.  See Lombardo, 279 F. Supp. 3d at 509 ("Through clever re-arrangement of the original material, the Play attempts to depict the realities of the modern world in which we live" and "lampoons [the original work] by highlighting the ridiculousness of the utopian society depicted in the original work."); cf.  TCA Television Corp. v. McCollum, 839 F.3d 168, 182-83 (2d Cir. 2016) (finding subsequent work not transformative where the "only purpose served by the extent of defendants' taking is identically comedic to that of the original authors . . . . [T]here is 'nothing transformative' about using an original work 'in the manner it was made to be' used.") (citation omitted).

For these reasons, Defendants' reliance on the Second Circuit Court of Appeals' decision in <u>Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith</u>, misses the mark.  11 F.4th 26 (2d Cir. 2021).  At issue in that decision was whether Andy Warhol's Prince Series was transformative of the underlying photograph of Prince on which the series was based.  The court found that the Prince Series was not transformative, noting that the "overarching purpose and function of the two works at issue . . . [was] identical, not merely in the broad sense that they are created as works of visual art, but also in the narrow but essential sense that they are portraits of the same person[,]" and cautioned that, "where a secondary work does not obviously comment on or relate back to the original or use the original for a purpose other than that for which it was created, the bare assertion of a 'higher or different artistic use,' is insufficient to render a work transformative."  11 F.4th at 41-43.  Here, in contrast, <u>Vape</u>, when considered holistically, constitutes a parody of <u>Grease</u>, as it "comment[s] on [and] relate[s] back to the original[,]"  and "comprise[s] something more than the imposition of another artist's style on the primary work."  <u>Id.</u> at 41-42.  Indeed, the <u>Warhol Foundation</u> Court reaffirmed the longstanding legal principle that "parody, which 'needs to mimic an original to make its point,' is routinely held transformative."  <u>Id.</u> at 37 (quoting <u>Campbell</u>, 510 U.S. at 580-81).

Because the Court has determined that <u>Vape</u> is a parody of <u>Grease</u>, and is thus transformative in nature, "it is of little significance that the use is also of a commercial nature." <u>Lombardo</u>, 279 F. Supp. 3d at 510; <u>see</u> <u>also</u> Google, 141 S. Ct. at 1204 ("[E]ven though Google's use was a commercial endeavor . . . that is not dispositive of the first factor, particularly in light of the inherently transformative role that the reimplementation played in the new [work]").  Thus, the first factor weighs in favor of finding that <u>Vape</u> makes fair use of <u>Grease</u>.

Nature of the Copyrighted Work

There is no dispute that <u>Grease</u> is a work of creative expression and thus "falls within the core of the copyright's protective purposes."  <u>Campbell</u>, 510 U.S. at 586.  However, while this factor favors Defendants, the Court declines to afford much weight to it because "parodies almost invariably copy publicly known, expressive works" and thus, in parody cases, this factor is "not much help" in determining whether the new work constitutes fair use.  <u>Id.</u>; <u>see also</u> <u>Lombardo</u>, 279 F. Supp. 3d at 511 ("[A]lthough this factor favors defendant because <u>Grinch</u> is a creative work, I decline to give much weight to this factor in light of the Play's parodic nature.").

Amount and Substantiality of the Portion Used

The third factor in the fair use analysis is "something of a sliding scale: the larger volume (or the greater importance) of the original taken, the less likely the taking will qualify as a fair use." <u>Adjmi</u>, 97 F. Supp. 3d at 533.  With respect to parodies, the Court's "attention turns to the persuasiveness of a parodist's justification for the particular copying done."  <u>Campbell</u>, 510 U.S. at 586.  Because "[p]arody's humor, or in any event its comment, necessarily springs from recognizable allusion to its object through distorted imitation[,]" "quotation of the original's most distinctive or memorable features, which the parodist can be sure the audience will know," cannot be avoided.  <u>Id.</u> at 588.  The inquiry "seeks to draw a line between taking enough to evoke the original and excessive appropriation."  <u>Adjmi</u>, 97 F. Supp. 3d at 533.

Defendants argue that <u>Vape</u>'s taking is "excessive" because <u>Vape</u> takes many of the creative elements, including the setting, music, plot arc, and characters from <u>Grease</u>, which Defendants argue amounts to the "heart" of the original work.  (Def. Mem. at 14-15.)  However, as previously explained, "[c]opying does not become excessive in relation to parodic purpose

merely because the portion taken was the original's heart."  Campbell, 510 U.S. at 588.  While the Court recognizes that Vape took substantial elements from Grease, the Court finds that the taking was not excessive because the use of those elements was necessary for Vape to achieve its parodic purpose.  The authors of Vape would not have been able to communicate their critical view of Grease's happy ending, and the manner in which Sandy "completely changes who she is in order to please a man," without incorporating Sandy and Danny's relationship and their overall plot arc into the new work.  (SAC ¶ 53.)  Nor would the authors of Vape have been able to communicate their critical views on the plot absurdities of Grease, including the happenstance of Sandy attending Danny's high school or the characters spontaneously breaking into choreographed song and dance, if Vape were not to allude to the setting, plot line, and music from the original work.  (Id. ¶ 55); see also Lombardo, 279 F. Supp. 3d at 511-12 (finding Play's use of underlying work not excessive even though it "incorporate[d] substantial elements of [the underlying work's] characters, setting, plot, and style" because the Play "engage[d] in . . . 'distorted imitation' in order to mock the original.")

Defendants also take issue with Plaintiff's copying of what they characterize as "minor details" from Grease—such as the "Thunder Road car race" and the "pajama party"—and the characters' "unique and creative mannerisms" that they allege were "copied without any parodic purpose."  (Def. Mem. at 15.)   The Court disagrees.  First, as previously explained, a parody depends on recognizable allusion to the original work, and notable character traits and scenes from the original plot can hardly be considered "minor."  Second, Plaintiff made significant alterations to the script in order to portray these familiar elements from the original work in a new, and critical, light.  (See, e.g., SAC ¶ 46 (describing reframing of characters' reaction to the Thunder Road car race, including Frenchy's remark, "Sandy, how'd you like that

extremely dangerous dick-measuring contest?" and Sandy's reply, "Oh Frenchy, it was exhilarating!").)

Vape also adds new features that did not exist in the film.  For example, the school coach from Grease appears in Vape, but, unlike in the original work, he "tries to sexually molest Danny" (SAC ¶ 41), and the recognizable character of the school principal has an implied addiction to opioid medications.  (Id. ¶ 32.)

For these reasons, the Court concludes that the amount copied was not excessive, and this factor weighs in Plaintiff's favor.

### Effect of the Use Upon Potential Market Value of the Copyrighted Work

The fourth factor of the fair use doctrine "asks 'whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work.'" Goldsmith, 11 F.4th at 48 (quotation omitted).  The Court must consider "whether the secondary use usurps demand for the protected work by serving as a market substitute," and must also "weigh[] relevant harm to the derivative market for a copyrighted work."  McCollum, 839 F.3d at 186.

The Court finds Vape's potential harm to Grease's market value for derivatives to be minimal.  Contrary to Defendants' characterization of the relationship between the two works, Vape cannot reasonably be viewed as a derivative "sequel to, or . . . updated remake of, Grease." (Def. Mem. at 17.)  As previously explained, Vape both mocks and attempts to communicate a critical message about the misogynistic features of Grease.  Although Defendants are correct that Vape updates the characters' language and cultural references to reflect those familiar to modern audiences, it does so not in a genuine or respectful attempt to update the film, but rather does so in a spirit of mockery.  See Campbell, 510 U.S. at 592 (explaining the "market for potential

derivative uses includes only those that creators of original works would in general develop or license others to develop").  Vape's updated language is often extremely vulgar and insensitive, emphasizing Grease's misogynistic tendencies.  In other instances, the updated references serve to make the original work appear ridiculous and superficial.  (See, e.g., SAC ¶ 28 and Greenberger Decl., Ex. 2 (explaining how Grease's love song, "Summer Nights" was altered to "Summer Snaps[,]" detailing "summer dreams" in "photo streams" and including crude references to aroused body parts and nonconsensual touching); SAC ¶ 31 (noting, in Vape, Danny's line that he's "not on Facebook anymore" because "too many bitches trying to get up in [his] business"); id. ¶ 40 and Def. Answer at 11, ¶ 12 (noting lyric change from Rizzo's song in Grease, "There are Worse Things I Could Do," to "I Prolly Just Need to Poo").)

As the Supreme Court has recognized, "there is no protectible derivative market for criticism."  Campbell, 510 U.S. at 592.  To the extent Vape "kills demand for" Grease due to its critical nature, that harm is not remediable under the Copyright Act.  Id.; see also Lombardo, 279 F. Supp. 3d at 513 ("[T]o the extent the Play causes fans of Dr. Seuss to abandon the original work altogether, such a concern is irrelevant.").  Thus, the Court concludes that the fourth factor weighs in favor of a finding of fair use.

<u>Weighing of the Factors</u>

The Court has considered the four factors under section 107 of the 1976 Copyright Act, and upon weighing them together, concludes that Vape constitutes fair use of Grease.

<u>Trademark Infringement</u>

Defendants have asserted a counterclaim for trademark infringement, alleging that they own the trademark "Grease," and that Plaintiff used the mark without permission "with the

intent to commercially benefit from the popularity and goodwill associated with [Defendants']
intellectual property." (Def. Answer at 14, ¶¶ 30-31.) The Court notes, however, that
Defendants failed to include any argument in support of their trademark claim in their motion
papers, and merely state that "[i]n the context of a Rule 12(c) [motion], all of the well pleaded
allegations . . . are accepted as true[,]" and "[a]s such, if [Defendants'] cross motion is granted,
then the trademark claim is upheld and survives Plaintiff's challenge, without more." (Docket
entry no. 75 ("Def. Reply") at 10.)

The Court may reasonably interpret Defendants' failure to contest Plaintiff's
motion that their counterclaim for trademark infringement should be dismissed as an
abandonment of the claim. See Simon v. City of New York, No. 14-CV-8391-JMF, 2015 WL
4092389, at *2 (S.D.N.Y. July 6, 2015) (collecting cases supporting proposition that it is the
obligation of party opposing a motion to dismiss to "address the issue, on pain of their claim
being deemed abandoned"). The Court also finds that Defendants' trademark counterclaim
should be dismissed for failure to state a plausible claim for relief.

The "crucial issue in an action for trademark infringement is whether there is any
likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or
indeed simply confused, as to the source of the goods in question." Louis Vuitton Malletier,
S.A. v. My Other Bag, Inc., 156 F. Supp. 3d 425, 440 (S.D.N.Y. 2016) (quoting Savin Corp. v.
Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004)), aff'd, 674 F. App'x 16 (2d Cir. 2016), cert
denied, 138 S. Ct. 221 (Oct. 2, 2017) (No. 17-72). In the context of parody, the Court is "to
apply a balancing test" between the First Amendment and the law of trademark, with the Lanham
Act only being "construed to apply . . . where the public interest in avoiding consumer confusion
outweighs the public interest in free expression." Lombardo, 279 F. Supp. 2d at 513-14 (quoting

Rogers v. Grimaldi, 875 F.2d 994, 999 (2d Cir. 1989)); see also Cliffs Notes, 886 F.2d at 495 n.3 (indicating that application of the Polaroid test is "at best awkward in the context of parody, which must evoke the original and constitutes artistic expression").

Here, the Court concludes that the likelihood that ordinary consumers will be misled by Plaintiff's use of the mark, "Grease," is minimal, and holds that the public's interest in free speech outweighs Defendants' interest in protecting the trademark as used in the context of Vape.  Plaintiffs use the mark, Grease, on an opening credits slide to the production that states, "Based on GREASE by Jim Jacobs and Warren Casey" and in advertising materials that describe Vape as "A live musical parody of Grease!"  (Pl. Answer ¶ 30.)  These descriptive phrases communicate the object of the parody.  See Lombardo, 279 F. Supp. 3d at 514 (finding use of trademarked elements in promotional materials served "plaintiffs' parodic purpose" as a "parodic work must necessarily evoke elements of the original work, including trademarked elements").  They also make it clear that Vape is a parody based on Grease, not a production of Grease.  To the extent Defendants are aggrieved that the word "VAPE" appears in a similar font and with the same coloring as the word "GREASE" in Plaintiff's advertising materials,[3] the Court notes that Defendants' allegation that the Grease mark is "well-known and recognized throughout the world" (see Def. Answer at 13, ¶ 19), renders any supposed harm unlikely because the "recognizability of the mark may make it easier for the audience to realize that the use is a parody and a joke on the qualities embodied in [the] trademarked word."  Louis Vuitton, 156 F. Supp. 3d at 441 (citation omitted).  Viewing the factual allegations in the light most favorable to Defendants, the use of the title slide and the name, Grease, plainly does not attribute the play to the authors of the original work or embody a representation that Vape is Grease.

---

[3]        (See Pl. Answer ¶ 30; see also Greenberger Decl., Ex. 3.)

Thus, the Court concludes that Defendants have failed to state plausibly a claim for trademark infringement.

Violation of Statutory Right of Privacy

Defendants assert a counterclaim for violation of the right of privacy under sections 50 and 51 of the New York Civil Rights Law, alleging that Plaintiff utilized Defendant Jim Jacobs' name without permission in marketing and advertising material for Vape and in the production. (Def. Answer at 14, ¶¶ 30-31 and 16, ¶ 46.) Plaintiff admits that the name of Defendant Jacobs was used in the "opening credits slide that states 'Based on GREASE by Jim Jacobs and Warren Casey'" (see Pl. Answer ¶ 30), but submits that the usage of Mr. Jacobs' name in "a work of art – like a play – does not constitute a violation of the statute." (Docket entry no. 65 ("Pl. Mem.") at 22.)

Defendants have again failed to state plausibly a claim for relief. To prevail on a statutory right to privacy claim under the New York Civil Rights Law, a claimant must prove: "(1) use of plaintiff's name, portrait, picture or voice (2) for advertising purposes or for the purposes of trade (3) without consent and (4) within the state of New York." Lohan v. Perez, 924 F. Supp. 2d 447, 454 (E.D.N.Y. 2013) (internal quotations and citations omitted). Courts interpreting the statute have found that the law does not prohibit the nonconsensual use of an individual's name in a form of protected First Amendment speech. See id. (finding that use of plaintiff's name in song did not violate privacy law); Burck v. Mars, Inc., 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008) ("Sections 50 and 51 are limited in their reach because of the First Amendment" and "do not apply to works of art."). In addition, the "ancillary use" exception provides that "advertising . . . undertaken in connection with a use protected by the First Amendment falls outside the statute's reach." Hoepker v. Kruger, 200 F. Supp. 2d 340, 349-51

(S.D.N.Y. 2002) (finding both museum exhibit, and brochures promoting the exhibit, to be immune from right of privacy claim); see also Rand v. Hearst Corp., 298 N.Y.S.2d 405, 410-412 (1st Dep't 1969) (finding that use of Plaintiff's name on book jacket to describe author's writing style was not prohibited by the statute and noting that a contrary holding "would constitute an impermissible restriction on what we deem to be the right of a publisher in informing the public of the nature of his book and comparing it with the works of other authors").  Here, Plaintiff has used the name to identify a protected parody of a work by Defendant Jacobs, and there is no violation of Jacobs' statutory right to privacy.

For the foregoing reasons, Defendants have failed to plead a viable counterclaim under the New York Civil Rights Law in connection with Plaintiff's use of Defendant Jacobs' name in the underlying play, or in advertising for the play.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted, in its entirety, and Defendants' cross-motion is denied, in its entirety.  The Court hereby declares that the musical play Vape, as documented in the record before the Court, constitutes a parody of the 1978 film version of the musical, Grease, and thus constitutes fair use of the elements of Grease that are used in Vape.  Plaintiff is entitled to recover its reasonable attorneys' fees incurred in the prosecution of this action and is hereby directed to file its properly supported motion for such fees within **30 days** of the entry of judgment in Plaintiff's favor.  Defendants shall have **30** days to file their response, and Plaintiff shall have **15 days** to file any reply.

This Memorandum Opinion and Order resolves docket entry nos. 63 and 69. The Clerk of Court is respectfully directed to enter judgment in accordance with this decision in Plaintiff's favor and close the case.

SO ORDERED.

Dated: New York, New York
May 12, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge